LIBERTY WAREHOUSE COMPANY *v.* BURLEY TOBACCO GROWERS' CO-OPERATIVE MARKETING ASSOCIATION.

ERROR TO THE COURT OF APPEALS OF KENTUCKY.

No. 18. Argued February 23, 1927.—Decided February 20, 1928.

1. A party challenging a judgment of a state court must show that its enforcement would deprive him, not another, of some right arising under the Constitution or laws of the United States properly asserted below. P. 88.
2. The power lodged in state courts to conform their proceedings to reasonable requirements of local law was not abused in this case by an order striking a part of the answer, based apparently upon the Kentucky Declaratory Judgment Law, asking the court to determine the validity of the statute here in question and to declare defendant's rights and duties, and advancing a counterclaim. P. 88.
3. *Semble* that the Kentucky Declaratory Judgment Law does not authorize a defendant to ask judgment by counterclaim. P. 88.

4. This Court has no jurisdiction to review a mere declaratory judgment. P. 89.

5. An answer alleging that the plaintiff is a trust or combination organized for the purpose of creating and carrying out restrictions of trade unlawfully and contrary to the common law, without mentioning the Constitution or any statute of the United States, does not raise a federal question. *Id.*

6. A corporation does not possess the privileges and immunities of a citizen of the United States within the meaning of the Constitution. *Id.*

7. The Co-operative Marketing Act of Kentucky, aiming, in the public interest, to assist agricultural producers in the orderly marketing of their products and to protect them and consumers from manipulation of prices by middlemen, authorizes the incorporation of non-profit associations, with membership confined to such producers and with power to contract with their respective members only for the sale to the corporation of their respective crops of the products dealt in, during a period of not more than ten years, and for marketing thereof by the corporation and disposition of the proceeds, less expenses, among the members according to the quantity and quality of their deliveries. It declares that such an association shall not be deemed a conspiracy, illegal combination or monopoly; that such contracts shall not be illegal; that any person knowingly inducing a breach of such a contract by a member shall be guilty of a misdemeanor, subject to fine and liable to the association in a civil suit in the penal sum of $500 for each offense; and that any warehouseman shall be liable to the association in the same penalty, who, having knowledge or notice of such a contract, persuades · or permits the member who made it to break it, by accepting or receiving his products for sale or auction contrary to the terms of such contract. *Held:*

(1) No right of a warehouse company guaranteed by the Fourteenth Amendment is impaired by merely authorizing corporations, with membership limited to agriculturalists, and permitting contracts for purchase and resale of farm products. P. 89.

(2) This is also true of the declaration that such associations shall not be deemed monopolies, combinations, etc., in restraint of trade, and that contracts with members shall be deemed legal. The State may declare its own policy in such matters. *Id.*

(3) There is nothing to show that in Kentucky, since the passage of the Act, other producers may not form voluntary associations and make and enforce contracts like those which the Act expressly authorizes. P. 90.

(4) As the statute does not prescribe more rigorous penalties for warehousemen than for others who willingly solicit, persuade or induce a member to break his marketing contract with his association, a claim that the provision in that regard deprives warehousemen of the equal protection of the laws, is without substantial basis. *Connolly* v. *Union Pipe Co.,* 184 U. S. 540, distinguished. P. 91.

(5) *Quaere,* whether the liberty protected by the Constitution includes the right to induce a breach of contract between others for the aggrandizement of the intermeddler. P. 91.

(6) The statute is of a kind that promotes the common interest, and provision for protecting the marketing contracts between an association and its members is essential to its plan; the legislature was within its powers in providing against probable interference and to that extent limiting the liberty of contract previously enjoyed by warehousemen. Pp. 92, 96.

8. The liberty of contract guaranteed by the Constitution is freedom from arbitrary restraint—not immunity from reasonable regulation to safeguard the public interest. The question is whether the restrictions of the statute have reasonable relation to a proper purpose. P. 97.

9. A provision for a penalty to be received by the aggrieved party as punishment for the violation of a statute, does not invalidate it. *Id.*

10. The pleadings in this case allege no burden upon interstate commerce amounting to regulation, nor do they properly and definitely advance any claim under a federal statute. P. 89.

208 Ky. 643, affirmed.

ERROR to a judgment of the Court of Appeals of the State of Kentucky, which affirmed a judgment for a penalty and attorney's fees, recovered by the above-named defendant in error from the plaintiff in error in an action by the former under the Kentucky Co-operative Marketing Act.

*Mr. Allan D. Cole,* with whom *Mr. J. M. Collins* was on the brief, for plaintiff in error.

The Court of Appeals erred in taking and substituting judicial knowledge of an alleged history of the country and current events as a controlling reason to the exclusion of the undisputed facts disclosed by the record and

thereby denying to plaintiff in error due process of law. R. C. L. 1059; *Walton* v. *Stafford,* 43 N. Y. S. 1049; *North Hempstead* v. *Gregory,* 65 N. Y. S. 867; *Peyroux* v. *Howard,* 7 Pet. 342; *Brown* v. *Piper,* 91 U. S. 337; *Arkansas* v. *K. & T. Coal Co.,* 183 U. S. 190; Thayer on Evidence, c. 7, p. 181; *Powell* v. *Brunswick Co.,* 150 U. S. 433; *First National Bank* v. *Ayers,* 160 U. S. 667.

Since section 27 of the Bingham Act undertakes to confer upon defendant in error and others of its class the exclusive right to prosecute a penal action where no penal offense has been committed, it denies to plaintiff in error the equal protection of the laws.

If the right of recovery be not a penal action, it still denies to plaintiff in error the equal protection of the laws, in that it creates an action unknown to the common law, as declared in the case of *Chambers & Marshall* v. *Baldwin,* 91 Ky. 121, and hence is an exclusive privilege.

It denies equal protection of the laws in that it excludes all individuals and every corporation not organized under the Bingham Act from the enjoyment of a right of action for a tort against a third party for inducing or persuading one of the parties to breach a contract. *Atchison, etc., R. R. Co.* v. *Matthews,* 174 U. S. 104; *Opinion of Justices,* 211 Mass. 618.

It denies due process of law in that it takes from the jury the right to determine, and from the plaintiff in error the right to have them determine, the amount of damages to the property of defendant in error based upon the facts of the case. 6 R. C. L., p. 453; 12 C. J., p. 1234; *L. & N.* v. *Finn,* 235 U. S. 608.

The allowance of attorneys fees denies equal protection of the laws, in that the classification is based upon persons and not upon the character of the litigation. *Atchison etc., Ry.* v. *Vosburg,* 238 U. S. 59.

Prohibiting third parties to buy or handle products under contract with defendant in error infringes the liberty of contract guaranteed to plaintiff in error by the Fourteenth Amendment. *Minnesota Wheat Growers Co-operative Market Ass'n* v. *Radke,* 163 Minn. 403.

The section attempts to prevent all dealings between members of a co-operative marketing association and outsiders in respect to products contracted for by the association, no matter how free from legal malice or devoid of inducement the conduct of the outsiders may have been, provided they knew that the product was under contract. *Sweeney* v. *Smith,* 167 Fed. 385; affirmed 171 Fed. 645; *Northern Wisconsin Co-operative Tobacco Pool* v. *Bekedal,* 182 Wis. 571.

It is beyond the power of the legislature to make it a tort to purchase, in the ordinary course of a legitimate business, from the true owner, a wholesome staple commodity upon which there is no lien and which is not under any ban or regulation because of inherent qualities or use. *Williams* v. *Evans,* 139 Minn. 32; *Miller* v. *Wilson,* 236 U. S. 373; *Wolff Packing Co.* v. *Court of Industrial Relations,* 267 U. S. 552.

The purpose of classification under § 27 is private, not public welfare. See *Lawton* v. *Steele,* 152 U. S. 137; *Adams* v. *Tanner,* 244 U. S. 595; *Noble State Bank* v. *Haskell,* 219 U. S. 104; *Eubank* v. *Richmond,* 226 U. S. 137; *Munn* v. *Illinois,* 94 U. S. 113; *McLean* v. *Arkansas,* 211 U. S. 539; *Brass* v. *North Dakota,* 152 U. S. 391; *German Alliance Ins. Co.* v. *Lewis,* 233 U. S. 389.

Section 27 undertakes to regulate interstate commerce. *Binderup* v. *Pathe Exchange,* 263 U. S. 309; *Stafford* v. *Wallace,* 258 U. S. 516; *Swift & Co.* v. *United States,* 196 U. S. 375; *Shafer* v. *Farmers Grain Co.,* 268 U. S. 189; *Austin* v. *Tennessee,* 179 U. S. 343; *Cook* v. *Marshall County,* 196 U. S. 261; *Leizy* v. *Harden,* 135 U. S. 100.

Since the Act in question, under regulations therein prescribed and penalties denounced, forbids warehousemen in all the States of the Union conducting warehouses in Kentucky from shipping their products of Burley Cooperative Growers into Kentucky for sale at public auction over the floors of loose leaf tobacco warehouses, regardless of the nature of the contracts under which the shipments are made, or the manner and condition in which the products are shipped, it follows that it directly interferes with the transportation, by land or water from one State to another, which transportation is itself interstate commerce.

If a recovery cannot be had upon a contract which was made to further the objects of an illegal combination (*Continental Wall Paper Co.* v. *Lewis Voight,* 212 U. S. 227), upon what principle can a recovery be had where damages are sought against a third party for inducing the breach of a contract, which, if sued upon, would itself have been unenforceable?

Total suppression of the trade in the commodity is not necessary in order to render the combination one in restraint of trade. It is the effect of the combination in limiting and restraining the right of each of the members to transact business in the ordinary way, as well as its effect upon the volume or extent of the dealing in the commodity, that is regarded. *Addyston Pipe Co.* v. *U. S.,* 175 U. S. 211; *C. N. O. Fuel Co.* v. *U. S.,* 155 Fed. 610; *O'Halloran* v. *American Sea Breen Slate Co.,* 207 Fed. 187; *Ford Motor Co.* v. *Union Motor Sales Co.,* 244 Fed. 156; *Miles Medical Co.* v. *Park etc. Co.,* 220 U. S. 373; *U. S.* v. *Kellogg Toasted Corn Flakes Co.,* 222 Fed. 725; *Knawer* v. *U. S.,* 237 Fed. 8; *Monarch Tobacco Works* v. *American Tobacco Co.,* 165 Fed. 774; *Swift* v. *U. S.* 196 U. S. 375.

Notwithstanding the repeal of the Anti-Trust Act of 1890 by the General Assembly of Kentucky during the

same session which it enacted the Bingham Act, there stands the common law. *Gay* v. *Brent,* 166 Ky. 883; *Commonwealth* v. *Hatfield Coal Co.,* 186 Ky. 411; *Love* v. *Kozy Theatre Co.,* 193 Ky. 336.

If persons under the same circumstances and conditions are treated differently, the Act in question does not classify, but arbitrarily discriminates. See *Hing* v. *Crowley,* 113 U. S. 702; *Railway Co.* v. *Beckwith,* 129 U. S. 26; *American Sugar Refining Co.* v. *Louisiana,* 179 U. S. 89; *McFarland* v. *American Refining Co.,* 241 U. S. 79.

Statutes purporting to prohibit the formation of trusts for the purpose of fixing the price or regulating the production of articles of commerce, but exempting from their provisions all persons engaged in agriculture and raising live stock, are unconstitutional as class legislation denying the equal protection of the laws to those not included in the exempted class. 6 R. C. L., § 396; *Connolly* v. *Union Sewer Pipe Co.,* 184 U. S. 540; *Brown* v. *Jacobs Pharmacy Co.,* 115 Ga. 429; *Davis* v. *Massachusetts,* 167 U. S. 43; *New York etc. R. R.* v. *Bristol,* 151 U. S. 567; *Cantina* v. *Tillman,* 54 Fed. 947; *Parks* v. *State,* 159 Ind. 211; *State* v. *Bohemier,* 96 Me. 257; *State* v. *Latham,* 115 Me. 176; *American Coal Co.* v. *Allegany County Comm'rs,* 128 Md. 594; *Commonwealth* v. *Abrahams,* 156 Mass. 57; *People* v. *Coolidge,* 124 Mich. 664; *McKinster* v. *Sager,* 163 Ind. 671. See *Truax* v. *Corrigan,* 257 U. S. 335; *Gulf C. & S. F. R. R.* v. *Ellis,* 165 U. S. 150; *In re Opinion of Justices,* 211 Mass. 618; *U. S.* v. *American Linsed Oil Co.,* 262 U. S. 388; *American Column & Lumber Co.* v. *United States,* 257 U. S. 66.

Certain it is that the defendants are associated in a new form of combination and are resorting to methods which are not normal. If, looking at the entire contract by which they are bound together, in the light of what has been done under it, the Court can see that its necessary tendency is to suppress competition in trade between the

States, the combination must be declared unlawful. *American Column & Lumber Co.* v. *United States,* 257 U. S. 66.

Plaintiff in error, having been injured by the method of defendant in error in conducting its business, was compelled to ask for relief asserted in the third paragraph of its answer in the form of a counterclaim; because the admitted facts therein recited conclusively show defendant in error to be a monopoly, trust and combine operating in violation of the Federal Anti-Trust Laws. *Clabough* v. *Southern Wholesale Growers Ass'n,* 181 U. S. 706.

If § 27 is invalid, defendant in error has no right of action, and the counterclaim of plaintiff in error stands alone as a direct action. If for any reason it should be proper to eliminate from the third paragraph so much of its allegations as invokes damages under the Sherman Anti-Trust Act, there would remain sufficient allegations to enable plaintiff in error to amend, and under the facts stated, invoke damages pursuant to the provisions of the common law. *L. & N. Ry.* v. *Pointer,* 113 Ky. 952.

Any person who has been injured in his trade or business by the activities of an unlawful combination for that purpose is now generally held to be entitled to recover damages in an action at law for the loss suffered, both at common law and under the Anti-Trust statutes. *Shoshone Mining Co.* v. *Rutter,* 177 U. S. 513.

The counterclaim of plaintiff in error is not a suit in equity to prevent and restrain violations of the Sherman Act; nor does it indirectly attack the existence of defendant in error corporation, but calls in question the powers which the corporation has undertaken to exercise by reason of which plaintiff in error has been injured. Distinguishing, *Wilder* v. *Corn Products Co.,* 236 U.S. 165.

*Mr. Aaron Sapiro,* with whom *Messrs. Robert S. Marx* and *R. W. Bingham* were on the brief, for defendant in error.

The Co-operative Marketing Act provides a reasonable basis of classification. *Lindsley* v. *Natural Carbonic Gas Co.,* 220 U. S. 61; *Mutual Loan Co.* v. *Martell,* 222 U. S. 225; *Clark* v. *Kansas City,* 176 U. S. 114; *Cargill* v. *Minnesota,* 180 U. S. 452; *St. John* v. *New York,* 201 U. S. 633; *Watson* v. *Maryland,* 218 U. S. 173; *Hunter* v. *Mutual Reserve Ins. Co.,* 218 U. S. 573; *German Alliance Ins. Co.* v. *Hale,* 233 U. S. 307; *Armour & Co.* v. *North Dakota,* 240 U. S. 510; *Omechevarria* v. *Idaho,* 246 U. S. 343; *Armour* v. *Virginia,* 246 U. S. 1; *Heisler* v. *Colliery Co.,* 260 U. S. 245; *Crescent Cotton Oil Co.* v. *Mississippi,* 257 U. S. 129; *Jones* v. *Union Guano Co.,* 264 U. S. 171; *Packard* v. *Banton,* 264 U. S. 140; *Payne* v. *Kansas,* 248 U. S. 112; *Merchants Exchange of St. Louis* v. *Missouri ex rel. Barker,* 248 U. S. 365; *Dillingham* v. *McLaughlin,* 264 U. S. 370; *Missouri, K. T. Rwy.* v. *May,* 194 U. S. 267; *International Harvester Co.* v. *Missouri,* 234 U. S. 199; *Jewel Tobacco Warehouse Co.* v. *Kemper,* 206 Ky. 667.

This Court has definitely approved classifications of farmers and agricultural producers as reasonable and natural. *American Sugar Refining Co.* v. *Louisiana,* 179 U. S. 89; *German Alliance Ins. Co.* v. *Lewis,* 233 U. S. 389; *New York Central R. R.* v. *White,* 243 U. S. 188; *Ward* v. *Krinsky,* 259 U. S. 503; *Miller* v. *Wilson,* 236 U. S. 373; *Smith* v. *Kansas City Trust Co.,* 255 U. S. 180; *National Union Fire Ins. Co.* v. *Wanberg,* 260 U. S. 71.

The courts have specifically upheld the classification contained in the Standard Co-operative Marketing Acts. *Harrell* v. *Cane Growers Co-op. Ass'n,* 160 Ga. 30; *Clear Lake Co-op. Live Stock Shippers Ass'n* v. *Weir,* 200 Ia. 1293; *Rifle Potato Growers* v. *Smith,* 78 Colo. 171; *Owen County Burley Tobacco Society* v. *Brumback,* 128 Ky. 137; *Potter* v. *Dark Tobacco Growers Co-op. Ass'n,* 201 Ky. 441.

The provision that co-operative associations shall not be considered in restraint of trade or contrary to the laws against pooling or combinations, is a proper declaration of public policy.

The Congress of the United States has declared this policy. Clayton Act; Capper-Volstead Act, February 18, 1922; Co-operative Marketing Act, July 2, 1926.

Anti-Trust laws are an expression of public policy adopted by the legislature and by Congress, and may be changed. That public policy has undergone a change since the enactment of the original Sherman Anti-Trust Law and the anti-trust laws of the several States, has been recognized by the courts in numerous cases and has been recognized at common law without regard to statute. *Potter* v. *Dark Tobacco Growers Co-op. Ass'n*, 201 Ky. 441; *Rifle Potato Growers* v. *Smith*, 78 Colo. 171; *Harrell* v. *Cane Growers Co-op. Ass'n*, 126 S. E. 531; *List* v. *Burley Tobacco Growers Co-op. Ass'n*, 114 O. S. 361; *Clear Lake Co-op. Live Stock Shippers Ass'n* v. *Weir*, 200 Ia. 1293; *Northern Wisconsin Co-op. Tobacco Pool* v. *Bekkedal*, 182 Wis. 571; *Burley Tobacco Society* v. *Gillaspy*, 51 Ind. App. 583; *U. S.* v. *Freight Ass'n*, 166 U. S. 290; *Village of Euclid* v. *Ambler Realty Co.*, 272 U. S. 365. *Connolly* v. *Union Sewer Pipe Co.*, 184 U. S. 540, distinguished. See *American Sugar Refining Co.* v. *Louisiana*, 179 U. S. 89; *New York Central R. R.* v. *White*, 243 U. S. 188; *Miller* v. *Wilson*, 236 U. S. 373; *Billings* v. *Illinois*, 188 U. S. 97; *Cox* v. *Texas* 202 U. S. 446; *Duplex Printing Press Co.* v. *Deering*, 254 U. S. 443.

The *Connolly* case has uniformly been held inapplicable to co-operative marketing cases. *Dark Tobacco Growers Co-op. Ass'n* v. *Dunn*, 150 Tenn. 612; *Kansas Wheat Growers Ass'n* v. *Charlet*, 118 Kans. 965; *List* v. *Burley Tobacco Growers Co-op. Ass'n*, 114 O. S. 361; *Minnesota Wheat Growers Co-op. Marketing Ass'n* v.

*Huggins,* 162 Minn. 471; *Northern Wisconsin Co-op. Tobacco Pool* v. *Bekkedal,* 182 Wis. 571.

Sections 26 and 27 are reasonable and necessary provisions to make the co-operative marketing system practical and effective and to safeguard the marketing contract between the association and its members from breach deliberately induced by third persons outside the association. *Tobacco Growers Warehouse Ass'n.* v. *Danville Warehouse Co.,* 144 Va. 456; *Northern Wisconsin Co-op. Tobacco Pool* v. *Bekkedal,* 182 Wis. 571; *Hollingsworth* v. *Texas Hay Ass'n,* 246 S. W. 1068; *Texas Farm Bureau Cotton Ass'n.* v. *Stovall,* 113 Tex. 273.

The marketing contract is the cornerstone of the co-operative marketing structure. The legislature has a right to protect such contracts against breach which threatens the marketing system. *Commonwealth* v. *Hodges,* 137 Ky. 233; *Hollingsworth* v. *Texas Hay Ass'n.,* 246 S. W. 1068; *Tobacco Growers Co-op. Ass'n.* v. *Danville Warehouse Co.,* 144 Va. 456.

The penal provision is necesary to protect the contract. Therefore, the courts have, without exception, sustained the remedies provided by the Co-operative Marketing Act to enforce the performance of the contract. *Burley Tobacco Society* v. *Gillaspy,* 51 Ind. App. 583; *Arkansas Cotton Growers Co-op. Ass'n* v. *Brown,* 275 S. W. 46; *Harrell* v. *Cane Growers Co-op. Ass'n,* 160 Ga. 30; *Kansas Wheat Growers Ass'n* v. *Schulte,* 113 Kan. 672; *Manchester Dairy System* v. *Hayward,* 82 N. H. 193; *Oregon Growers Co-op. Ass'n* v. *Lentz,* 173 Ore. 571; *Owen County Burley Tobacco Society* v. *Brumback,* 128 Ky. 137; *Dark Tobacco Growers Co-op. Ass'n* v. *Dunn,* 150 Tenn. 612; *Dark Tobacco Growers Co-op. Ass'n* v. *Mason,* 150 Tenn. 228.

It is an actionable tort for an outsider to deliberately and maliciously interfere with the contract relations of other parties. *Lumley* v. *Gye,* 2 El. & Bl. 216; *Bowen* v.

*Hall,* 6 Q. B. 333; *Temperton* v. *Russell,* 1 Q. B. 719;
*Angle* v. *Chicago, St. P. & M. & O. Rwy.,* 151 U. S. 1;
*Bitterman* v. *L. & N. Rwy.,* 207 U. S. 205; *Kinner* v. *Lake
Shore & M. S. R. R.,* 69 O. S. 339; *Schulbach* v. *Mc-
Donald,* 179 Mo. 163; *Samuelson* v. *State,* 116 Tenn. 470;
*Hitchman Coal & Coke Co.* v. *Mitchell,* 245 U. S. 229;
16 Rose's Notes, 727; *Westinghouse Electric & Mfg. Co.* v.
*Diamond State Fiber Co.,* 268 Fed. 121; 15 R. C. L. 60;
38 Cyc. 508; *Northern Wisconsin Co-op. Tobacco Pool* v.
*Bekkedal,* 182 Wis. 571; *R. and W. Hat Shop* v. *Scully,*
98 Conn. 1; *Thacker Coal & Coke Co.* v. *Burke,* 59 W. Va.
253; *Beekman* v. *Marsters,* 195 Mass. 205; *Swain* v. *John-
son,* 151 N. C. 93; 17 Col. Law Rev. 113; 36 Har. Law
Rev. 663.

Sections 26 and 27 are a proper exercise of police power
to prevent fraudulent and unlawful evasion or breach of
contract. *Bacon* v. *Walker,* 204 U. S. 311; *Reaves Ware-
house Corp'n.* v. *Commonwealth,* 141 Va. 194; *Jewell
Warehouse Co.* v. *Kemper,* 206 Ky. 267; *Rosenthal* v.
*New York,* 226 U. S. 260; *Shurman* v. *Atlanta,* 148 Ga. 1;
*Louisiana* v. *Weinstein,* 181 La. 1086; *Levi* v. *Annison,* 155
Ala. 149; *Lemieux* v. *Young,* 211 U. S. 489; *Kidd Dater &
Price Co.* v. *Musselman Grocery Co.,* 217 U. S. 461; *Steele,
etc. Co.* v. *Miller,* 92 O. S. 115.

Statutes closely analogous have been adopted in the
cotton-growing States to prevent fraud in the sale of cot-
ton. *Parks* v. *Laurns' Cotton Mills,* 75 S. C. 560; *State*
v. *Moore,* 104 N. C. 714. See also *Minnesota ex rel. Beek*
v. *Wagener,* 77 Minn. 483; *Biddles* v. *Enright,* 239 N. Y.
354; *Holsman* v. *Thomas,* 112 Oh. St. 397; *Hall* v. *Geiger
Jones Co.,* 242 U. S. 539; *Caldwell* v. *Sioux Falls Stock-
yards Co.,* 242 U. S. 559; *Merrick* v. *N. W. Halsey Co.,*
242 U. S. 568; *Brazee* v. *Michigan,* 241 U. S. 340; *Engel*
v. *O'Malley,* 219 U. S. 128.

The penalties provided in § 27 do not deny due process
of law or the equal protection of the laws to warehouse-

men and auctioneers. *Fidelity Mutual Life Ass'n.* v. *Mettler,* 185 U. S. 308; *Fraternal Mystic Circle* v. *Snyder,* 227 U. S. 497; *St. Louis, Iron Mountain & Southern Ry.* v. *Williams,* 251 U. S. 63; *Chicago, N. W. Ry.* v. *Nye, Schneider, Fowler Co.,* 260 U. S. 35; *Atchison, T. & S. F. R. R.* v. *Matthews,* 174 U. S. 96; *Seaboard Air Line* v. *Seegars,* 207 U. S. 73; *St. Louis J. M. & S. R. Co.* v. *Wynne,* 224 U. S. 354; *Yazoo & M. V. R. R.* v. *Jackson Vinegar Co.,* 226 U. S. 217; *M. K. & T. R. Co.* v. *Cade,* 233 U. S. 642. Distinguishing, *Atchison, T. & S. F. Ry.* v. *Vosburg,* 238 U. S. 56. *Hartford Fire Ins. Co.* v. *Wilson Toomer Fertilizer Co.,* 4 F. (2d) 835.

The counterclaim for a declaration of rights as to the Anti-Trust Law is improper pleading. The state courts have no jurisdiction of an action for treble damages under the Sherman Anti-Trust Law.

A tortious intermeddler with the contracts between defendant in error and its members cannot raise the question of their illegality. *Northern Wisconsin Co-op. Tobacco Pool* v. *Bekkedal,* 182 Wis. 571.

MR. JUSTICE MCREYNOLDS delivered the opinion of the Court.

The Liberty Warehouse Company, a Kentucky corporation, operates a warehouse at Maysville in that State and there receives and sells loose-leaf tobacco for the accounts of growers. The Burley Tobacco Growers' Cooperative Marketing Association incorporated under The Bingham Co-operative Marketing Act (Ch. 1, Acts of Kentucky, 1922) commenced this proceeding against the Warehouse Company in the Mason County Circuit Court. It charged the Warehouse Company with willful violation of the Act by selling pledged tobacco, and asked judgment for the prescribed penalty ($500) and attorney's fees.

The Bingham Act (32 sections) authorizes the incorporation of non-profit, cooperative associations for the

orderly marketing of agricultural products; provides only producers may become members and that the corporation may contract only with them for marketing such products. It declares that these contracts shall not be illegal; prescribes penalties for interfering therewith, and further provides that the association shall not be deemed a conspiracy, illegal combination or monopoly. Three pertinent sections follow.

" Sec. 26. *Misdemeanor to induce breach of marketing contract of co-operative association—spreading false reports about the finances or management thereof.*

"Any person or persons or any corporation whose officers or employees knowingly induce or attempt to induce any member or stockholder of an association organized hereunder to breach his marketing contract with the association, or who maliciously and knowingly spreads false reports about the finances or management thereof, shall be guilty of a misdemeanor and be subject to a fine of not less than one hundred ($100.00) dollars and not more than one thousand ($1,000) dollars for each such offense; and shall be liable to the association aggrieved in a civil suit in the penal sum of five hundred ($500) dollars for each such offense."

" Sec. 27. *Warehousemen liable for damages for encouraging or permitting delivery of products in violation of marketing agreements.*

"Any person, firm or corporation conducting a warehouse within the State of Kentucky who solicits or persuades or permits any member of any association organized hereunder to breach his marketing contract with the association by accepting or receiving such member's products for sale or for auction or for display for sale, contrary to the terms of any marketing agreement of which said person or any member of the said firm or any active officer or manager of the said corporation has knowledge or notice, shall be liable to the association aggrieved in a civil

suit in the penal sum of five hundred ($500) dollars for each such offense; and such association shall be entitled to an injunction against such warehouseman to prevent further breaches and a multiplicity of actions thereon.   In addition, said warehouseman shall pay to the association a reasonable attorney's fee and all costs involved in any such litigation or proceedings at law.

" This section is enacted in order to prevent a recurrence or outbreak of violence and to give marketing associations an adequate remedy in the courts against those who encourage violations of co-operative contracts."

" Sec. 28. *Associations are not in restraint of trade.*

"Any association organized hereunder shall be deemed not to be a conspiracy nor a combination in restraint of trade nor an illegal monopoly; nor an attempt to lessen competition or to fix prices arbitrarily or to create a combination or pool in violation of any law of this State; and the marketing contracts and agreements between the association and its members and any agreements authorized in this act shall be considered not to be illegal nor in restraint of trade nor contrary to the provisions of any statute enacted against pooling or combinations."

The petition (filed Dec. 14, 1923) alleges—

That the Association was organized to provide means for orderly marketing of tobacco grown or acquired by members and no others.   Identical contracts (the standard form is exhibited) with many growers obligate them to deliver to it all of their tobacco during five years.   Tobacco received under these contracts is sold to manufacturers and dealers as market conditions permit and the proceeds less expenses are distributed among the members, according to quality and quantity of their deliveries.

That one Mike Kielman joined the Association and executed the standard contract.   Notwithstanding this he delivered two thousand pounds of the 1923 crop to the Warehouse Company and it sold the same, with full

knowledge of the circumstances. Before the sale the Association notified the Warehouse Company of Kielman's membership and of his marketing contract, requested it not to sell his tobacco and called attention to the prescribed penalties. " Plaintiff says that after service of said notice and with the full knowledge that said tobacco had been sold to this plaintiff, the defendant knowingly persuaded and permitted the said Mike Kielman to breach his marketing contract with the plaintiff association by accepting and receiving the said member's product for sale and for auction and selling same contrary to the terms of said marketing agreement, contrary to the provisions of Sec. 27 of the Bingham Cooperative Marketing Act."

The standard contract provides—

" The Association agrees to buy and the grower agrees to sell and deliver to the Association all of the tobacco produced by or for him or acquired by him as landlord or lessor, during the years 1922, 1923, 1924, 1925 and 1926. . . . The Association agrees to resell such tobacco, together with tobacco of like type, grade and quality delivered by other growers under similar contracts, at the best prices obtainable by it under market conditions, and to pay over the net amount received therefrom (less freight, insurance and interest), as payment in full to the grower and growers named in contracts similar hereto, according to the tobacco delivered by each of them," etc.

" Inasmuch as the remedy at law would be inadequate; and inasmuch as it is now and ever will be impracticable and extremely difficult to determine the actual damage resulting to the Association should the grower fail so to sell and deliver all of his tobacco the grower hereby agrees to pay to the Association for all tobacco delivered, consigned or marketed or withheld by or for him, other than in accordance with the terms hereof, the sum of five cents per pound as liquidated damages, averaged for all types

and grades of tobacco, for the breach of this contract; all parties agreeing that this contract is one of a series dependent for its true value upon the adherence of each and all of the growers to each and all of the said contracts.

" The grower agrees that in the event of a breach or threatened breach by him of any provision, regarding delivery of tobacco the Association shall be entitled to an injunction to prevent breach or further breach thereof and to a decree for specific performance and sale of personal property under special circumstances and conditions, and that the buyer cannot go to the open markets and buy tobacco and replace any which the grower may fail to deliver."

The Warehouse Company presented an amended answer and counterclaim in three sections.

The first sets up " in estoppel and in bar " of the alleged action that the Association since January 13, 1922, has been a trust or combination of the capital, skill and acts of divers persons and corporations doing commercial business in Kentucky and between that State and other States and foreign countries " organized and conducted for the express purpose of unlawfully and contrary to the common law, creating and carrying out restrictions in trade " under the guise of stabilizing prices.

The second asserts that Sections 26 and 27, Bingham Act, conflict with the Fourteenth Amendment, abridge defendant's privileges and immunities as a citizen of the United States, deprive it of corporate life, liberty and property without due process of law and deny it equal protection of the laws.

The third seems to be based upon the Kentucky Declaratory Judgment Law. It advances a counterclaim; also asks the court to determine whether the Bingham Act is valid and for a declaration of rights and duties.

The trial court struck section three " from the records " and sustained demurrers to sections one and two. The

Warehouse Company elected to plead no further. Trial by jury was waived " the petition being submitted to the court on the law and facts." Judgment for $500—the prescribed penalty—and $100 attorney's fees went, for the Association, and was affirmed by the Court of Appeals.

In order to prevail here the Warehouse Company must show that enforcement of the challenged judgment would deprive it—not another—of some right arising under the Constitution or laws of the United States properly asserted below. *Southern Railway Co.* v. *King,* 217 U. S. 524; *Standard Stock Food Co.* v. *Wright,* 225 U. S. 540; *Hendrick* v. *Maryland,* 235 U. S. 610, 621; *Jeffrey Mfg. Co.* v. *Blagg,* 235 U. S. 571, 576; *Dahnke-Walker Co.* v. *Bondurant,* 257 U. S. 282, 289.

No Federal right was impaired by striking section three from the amended answer and counterclaim. Proceedings in state courts must conform to the reasonable requirements of local law. Whether they do is primarily for those courts to determine. Here we find no abuse of that power.

Section three asserts—" Defendant now makes its application to this court, upon its counterclaim, in accordance with the provisions of chapter 83 of the acts of 1922 of the General Assembly of Kentucky known as the Declaratory Judgment Law for the purpose of securing a declaration of its rights and duties under said Bingham Cooperative Marketing Act, in relation to the common law and the State and Federal Constitutions, as well as the Sherman Anti-Trust Law, and for the purpose of having this court determine whether in the conduct of its business it will be necessary for it to comply with the provisions of said Bingham Cooperative Marketing Act, or whether it is invalid in whole or part, and if so, in what part."

Apparently the Declaratory Judgment statute authorizes plaintiffs only to ask for judgments. It also provides:

" The court may refuse to exercise the power to declare rights, duties or other legal relations in any case where a decision under it would not terminate the uncertainty or controversy which gave rise to the action, or in any case where the declaration or counterclaim is not necessary or proper at the time under all the circumstances." This Court has no jurisdiction to review a mere declaratory judgment. *Liberty Warehouse Company* v. *Grannis*, 273 U. S. 70.

Section one presents no Federal question. It does not mention the Constitution or any statute of the United States, but claims that the Association is an unlawful trust or combination under common law rules. But the present controversy concerns a statute and a State may freely alter, amend or abolish the common law within its jurisdiction. *Baltimore & Ohio R. R.* v. *Baugh*, 149 U. S. 368, 378.

Section two challenges sections 26 and 27 of the Bingham Act because they offend the Fourteenth Amendment " in that said sections and each of them abridges defendant's privileges and immunities as a citizen of the United States and deprives defendant of its corporate life, liberty and property without due process of law and denies to it the equal protection of the laws." This suggests the only Federal questions open for our consideration. The pleadings allege no burden upon interstate commerce amounting to regulation, nor do they properly and definitely advance any claim under a Federal statute.

A corporation does not possess the privileges and immunities of a citizen of the United States within the meaning of the Constitution. *Western Turf Assn.* v. *Greenberg*, 204 U. S. 359, 363; *Selover* v. *Walsh*, 226 U. S. 112. The allegation concerning deprivation of corporate life is unimportant.

Certainly the statute impaired no right of the Warehouse Company guaranteed by the Fourteenth Amend-

ment by merely authorizing corporations with member-
ship limited to agriculturists and permitting contracts for
purchase and resale of farm products. This also is true
of the declaration that such associations shall not be
deemed monopolies, combinations or conspiracies in re-
straint of trade, and that contracts with members shall
not be illegal. The state may declare its own policy
as to such matters.

Sections 26 and 27 prohibit interference with contracts
permitted by local law and not alleged to conflict with
Federal law. Twenty-six declares any person or corpora-
tion who knowingly induces a member to break his mar-
keting contract guilty of a misdemeanor and subjects him
to a fine; also to suit for the penal sum of $500. Twenty-
seven hits warehousemen who solicit, persuade or permit
a member to break his marketing contract by accepting or
receiving pledged products for sale and subjects them to
penalties. It was under the latter section that judgment
went against the Warehouse Company.

The court below affirmed "there is no statute at pres-
ent in this State, nor was there any when the cause of
action herein arose, against pools, trusts and monopolies."
Considering this and further declarations in the same
opinion, we cannot say that any common law rule recog-
nized in the State of Kentucky forbade associations or
contracts similar to those before us when intended to pro-
mote orderly marketing. Undoubtedly the State had
power to authorize formation of corporations by farmers
for the purpose of dealing in their own products. And
there is nothing to show that since the Bingham Act pro-
ducers may not form voluntary associations and through
them make and enforce contracts like those expressly
authorized.

Do the provisions of the Bingham Act which afford pe-
culiar protection to marketing contracts with members
of the Association deprive the Warehouse Company of

equal protection of the laws, or conflict with the due process clause of the Fourteenth Amendment because without reasonable basis and purely arbitrary? These questions may be fairly said to arise upon the present record.

The statute penalizes all who wittingly solicit, persuade, or induce an association member to break his marketing contract. It does not prescribe more rigorous penalties for warehousemen than for other offenders. Nobody is permitted to do what is denied to warehousemen. There is no substantial basis upon which to invoke the equal protection clause.

*Connolly* v. *Union Sewer Piper Co.,* 184 U. S. 540, is much relied upon. But there the circumstances differed radically from those here presented; and always to determine whether equal protection is denied there must be consideration of the peculiar facts. Connolly resisted judgment for the purchase price of pipe upon the ground that the Union Company, the vendor, belonged to a combination or trust forbidden by an Illinois statute. The statute defined a trust, made participation therein criminal, and directed that those who purchased articles from an offending member should not be held liable for the price. Section 9 declared—"The provisions of this act shall not apply to agricultural products or live stock while in the hands of the producer or raiser." This court held that because of the exemption the Union Company was denied the equal protection of the law. It was forbidden to do what others could do with impunity. Here the situation is very different. The questioned statute undertakes to protect sanctioned contracts against any interference—no one could lawfully do what the Warehouse Company did.

Counsel maintain that the Bingham Act takes from the Warehouse Company the right to carry on business in the usual way by accepting and selling the tobacco of those

who voluntarily seek its services and thus unduly abridges
its liberty.   Undoubtedly the statute does prohibit and
penalize action not theretofore so restricted and to that ex-
tent interferes with freedom.   But this is done to protect
certain contracts which the legislature deemed of great
importance to the public and peculiarly subject to in-
vasion.   We need not determine whether the liberty pro-
tected by the Constitution includes the right to induce a
breach of contract between others for the aggrandizement
of the intermeddler—to violate the nice sense of right
which honorable traders ought to observe.

In *Minnesota, etc., Marketing Association* v. *Radke*
(1925) 163 Minn. 403, provisions of the cooperative mar-
keting act of Minnesota substantially like Section 27 were
declared invalid.   The Supreme Court said: "It seems
clear to us that it is beyond the power of the legislature
to make it a tort to purchase, in the ordinary course of a
legitimate business, from the true owner a wholesome
staple commodity upon which there is no lien and which
is not under any ban or regulation because of inherent
qualities or use.   Liberty of contract is assured by both
state and Federal Constitutions."

On the other hand, in *Commonwealth* v. *Hodges* (1910)
137 Ky. 233, the Kentucky Court of Appeals sustained a
statute which made it a criminal offense knowingly to pur-
chase a crop pledged to an unincorporated marketing
association.   The same doctrine is accepted by the opinion
below.

It is stated without contradiction that co-operative
marketing statutes substantially like the one under review
have been enacted by forty-two States.   Congress has
recognized the utility of co-operative association among
farmers in the Clayton Act, 38 Stat. 730; the Capper-
Volstead Act, 42 Stat. 388; and the Co-operative Market-
ing Act of 1926, 44 Stat. 802.   These statutes reveal wide-
spread legislative approval of the plan for protecting

scattered producers and advancing the public interest. Although frequently challenged, we do not find that any court has condemned an essential feature of the plan with the single exception of the Supreme Court of Minnesota in the above cited case.

In the court below it was said—

" We take judicial knowledge of the history of the country and of current events and from that source we know that conditions at the time of the enactment of the Bingham Act were such that the agricultural producer was at the mercy of speculators and others who fixed the price of the selling producer and the final consumer through combinations and other arrangements, whether valid or invalid, and that by reason thereof the former obtained a grossly inadequate price for his products. So much so was that the case that the intermediate handlers between the producer and the final consumer injuriously operated upon both classes and fattened and flourished at their expense. It was and is also a well known fact that without the agricultural producer society could not exist and the oppression brought about in the manner indicated was driving him from his farm thereby creating a condition fully justifying an exception in his case from any provision of the common law, and likewise justifying legislative action in the exercise of its police power."

The Supreme Court of Alabama declared in *Warren* v. *Alabama Farm Bureau Cotton Association* (1925) 213 Ala. 61—

" So far as we are advised, no American court has condemned a co-operative marketing contract of the character of this complainant association as injurious to the public interest or in any way violative of public policy. On the contrary, such contracts have been everywhere upheld as valid, if not positively beneficial to the public interest."

In *Arkansas Cotton Growers Co-op. Assn.* v. *Brown*
(1925) 168 Ark. 504, the court sustained a Co-operative
Marketing Act—

"The statute seems to be in a form which has become
standard, and has been enacted in many of the states, the
enactment of such legislation being manifestly prompted
by the universal urge to promote prosperity in agricul-
tural pursuits. There has been much discussion of the
plan in the decisions of the courts of the various states
where it has been adopted, and the general view expressed
is that the statute should be liberally construed in order
to carry out the design in its broadest scope."

In *Manchester Dairy System, Inc.* v. *Hayward* (1926)
82 N. H. 193, the Supreme Court of New Hampshire
said—

"Co-operative marketing agreements, containing the
essential features of the contract here considered, have
been recognized in many of our states as a legitimate
means of protecting its members against oppression, of
avoiding the waste incident to the dumping of produce
upon the market with the consequent wide fluctuations in
prices and of securing to the producer a larger share of
the price paid by the consumer for his products. Asso-
ciations of the character here exist in practically all of our
states and deal in nearly every form of agricultural
product. From year to year the co-operative idea in
marketing has been assuming wider scope and greater
economic importance. Public approval of such co-oper-
ative organizations is evidenced by the adoption of en-
abling legislation in more than two-thirds of the states,
including our own. . . . Such legislation has received
liberal construction by the courts. *Minn. Wheat Growers'
Assn.* v. *Huggins*, 203 N. W. 420, *et seq.* . . . No
sufficient ground appears from the record for holding that
the contract here under consideration is contrary to public
policy."

*Tobacco Growers' Co-op. Assn.* v. *Jones,* 185 N. C. 265—

"In view of the necessity of protecting those engaged in raising tobacco against the combination of those who buy the raw product at their own figures and sell it to the public at prices also fixed by themselves, this movement has been organized. By a careful examination of all the provisions of the act under which the association is acting, it will be seen that every precaution has been taken to insure that it will not be used for private gain and can operate only for the protection of the producers."

*Northern Wisconsin Co-operative Tobacco Pool* v. *Bekkedal,* 182 Wis. 571—

"The reasons for promoting such legislation are generally understood. It sprang from a general, if not well-nigh universal, belief that the present system of marketing is expensive and wasteful and results in an unconscionable spread between what is paid the producer and that charged the consumer. It was for the purpose of encouraging efforts to bring about more direct marketing methods, thus benefiting both producer and consumer and thereby promoting the general interest and the public welfare, that the legislation was enacted."

The purpose of the penalty clause (Section 27) was pointed out by the Supreme Court of Tennessee. *Dark Tobacco Growers' Co-op. Assn.* v. *Dunn* (1924), 150 Tenn. 614—

"The complainant could not do business without tobacco. When it contracts to sell, it must fill its contracts with tobacco delivered by its members. It cannot replace defendant's tobacco by purchasing upon the open market. Its charter prohibits it from so doing. For each pound of tobacco which is not delivered to the association by a member, there is a *pro rata* increase in the operating costs of the association; and that increase cannot be estimated in terms of money with definite exactness. For every defection of one member, there is a certain amount

of dissatisfaction engendered among other members; indeed, other members are encouraged not to deliver their tobacco, and the normal increase of the association's members is prevented. All of these things result in damage, but the amount of damage cannot possibly be computed."

Other pertinent cases are assembled in margin.[1]

The opinion generally accepted—and upon reasonable grounds, we think—is that the co-operative marketing statutes promote the common interest. The provisions for protecting the fundamental contracts against interference by outsiders are essential to the plan. This Court has recognized as permissible some discrimination intended to encourage agriculture. *American Sugar Refining Co.* v. *Louisiana,* 179 U. S. 89, 95. *Cox* v. *Texas,* 202 U. S. 446. And in many cases it has affirmed the general power of the States so to legislate as to meet a definitely threat-

---

[1] *Owen County Burley Tobacco Society* v. *Brumback,* 128 Ky. 137; *Burley Tobacco Society* v. *Gillaspy,* 51 Ind. App. 583; *Bullville Milk Producers' Assn.* v. *Armstrong,* 178 N. Y. S. 612; *Anaheim Citrus Fruit Assn.* v. *Yeoman,* 51 Cal. App. 759; *Washington Cranberry Growers' Assn.* v. *Moore,* 117 Wash. 430; *Poultry Producers of Southern California* v. *Barlow,* 189 Cal. 278; *Kansas Wheat Growers' Assn.* v. *Schulte,* 113 Kan. 672; *Brown* v. *Staple Cotton Co-op. Assn.,* 132 Miss. 859; *Oregon Growers' Co-op. Assn.* v. *Lentz,* 107 Ore. 561; *Texas Farm Bureau Cotton Assn.* v. *Stovall,* 113 Texas 273; *Potter* v. *Dark Tobacco Growers' Assn.,* 201 Ky. 441; *Tobacco Growers' Co-op. Assn.* v. *Jones,* 185 N. C. 265; *Milk Producers' Marketing Co.* v. *Bell,* 234 Ill. App. 222; *Dark Tobacco Growers' Co-op. Assn.* v. *Mason,* 150 Tenn. 228; *Rifle Potato Growers* v. *Smith,* 78 Colo. 171; *Clear Lake Co-op. Live Stock Shippers' Assn.* v. *Weir,* 200 Iowa 1293; *Minnesota Wheat Growers' Co-op. Assn.* v. *Huggins,* 162 Minn. 471; *Nebraska Wheat Growers' Assn.* v. *Norquest,* 113 Nebr. 731; *Harrell* v. *Cane Growers' Co-op. Assn.,* 160 Ga. 30; *California Bean Growers' Assn.* v. *Rindge Land & Navigation Co.,* 199 Cal. 168; *Louisiana Farm Bureau Cotton Growers' Co-op. Assn.* v. *Clark,* 160 La. 294; *List* v. *Burley Tobacco Growers' Co-op. Assn.,* 114 Ohio 361; *South Carolina Cotton Growers' Co-op. Assn.* v. *English,* 135 S. C. 19; *Tobacco Growers' Co-op. Assn.* v. *Danville Warehouse Co.,* 144 Va. 456.

ened evil. *International Harvester Co.* v. *Missouri*, 234 U. S. 199; *Jones* v. *Union Guano Co.*, 264 U. S. 171. Viewing all the circumstances, it is impossible for us to say that the legislature of Kentucky could not treat marketing contracts between the Association and its members as of a separate class, provide against probable interference therewith, and to that extent limit the sometime action of warehousemen.

The liberty of contract guaranteed by the Constitution is freedom from arbitrary restraint—not immunity from reasonable regulation to safeguard the public interest. The question is whether the restrictions of the statute have reasonable relation to a proper purpose. *Miller* v. *Wilson*, 236 U. S. 373, 380; *Lindsley* v. *Natural Carbonic Gas Co.*, 220 U. S. 61, 78. A provision for a penalty to be received by the aggrieved party as punishment for the violation of a statute does not invalidate it. *St. Louis, Iron Mountain & Southern Ry. Co.* v. *Williams, et al.*, 251 U. S. 63, 66.

*Affirmed.*