LOCAL DAIRYMEN'S COOPERATIVE ASSOCIATION, INC. *vs.* LEO POTVIN *et al.*

JUNE 27, 1934.

PRESENT: Stearns, C. J., Rathbun, Sweeney, Murdock, and Hahn, JJ.

SWEENEY, J.   This cause is before the court on respondents' appeal from a final decree entered in the Superior Court after hearing upon bill, answer and proof. Respondents' allege that the decree is against the law and the evidence.

Complainant was incorporated October 21, 1931, under the provisions of P. L. 1928, Chapter 1202, which provides for the incorporation of cooperative associations. Its members are persons who produce milk for sale in Providence and vicinity.   Many of these persons reside on farms in eastern Connecticut.

By the terms of a marketing agreement—signed by each member and the complainant—the complainant is appointed the sales agent for the milk and other dairy products

produced by that member who agrees to deliver his milk at any shipping station designated by the complainant. Complainant agrees to sell the milk by such methods and means as it deems to the best advantage of the member. The milk is transported by motor truck from the shipping stations in Connecticut to places in Providence and elsewhere as may be designated by complainant.

When complainant was organized respondent Potvin was engaged in the business of trucking milk from producers in Connecticut to dealers in Providence. He knew that complainant had marketing agreements by which it was appointed sales agent for the milk produced by its members. Mr. Potvin complied with the instructions of complainant's manager relative to the delivery of the milk of its members until September, 1932, when he refused to recognize its right to designate the place of delivery of the milk and his truck drivers began to deliver the milk to dealers who were in competition with the dealers designated by complainant.

Respondents denied that they had any relations, contractual or otherwise, with complainant or that they were under any obligation to comply with its orders and directions as to the delivery of the milk of its members. The Superior Court found against this latter contention and enjoined respondent Potvin and his drivers from delivering milk produced by complainant's members, except to dealers or places expressly designated by complainant.

The cooperative method in marketing has assumed wide scope and is of great economic importance. Statutes authorizing cooperative marketing have been enacted in more than forty-four states and the Congress has recognized the utility of such statutes. Cooperative marketing contracts have generally been held to be valid. *Liberty Warehouse Co.* v. *Burley Tobacco Growers &c. Assn.*, 276 U. S. 71 and cases cited therein. See also *Watertown Milk Producers Assn.* v. *Van Camp Packing Co.*, 77 A. L. R. 391, annotation 405; *Manchester Dairy System, Inc.* v. *Hayward*, 82 N. H. 193.

The marketing agreement between the member and the association is said to be the cornerstone of the cooperative marketing structure. If the association cannot enforce these agreements with its members, the project must fail. It is unquestioned that it is an actionable tort for an outsider to deliberately and maliciously interfere with the contractual relations of another. *Liberty Warehouse Co.* v. *Burley Tobacco Growers &c. Assn., supra; Lumley* v. *Gye,* 2 El. & Bl. 216; *Northern Wisconsin Co-op. Tobacco Pool* v. *Bekkedal,* 182 Wis. 571; *Beekman* v. *Marsters,* 195 Mass. 205.

Respondents argue that they should not be enjoined from carrying the milk of complainant's members who have broken their marketing agreements because respondents did not induce such members to breach their agreements. The argument cannot be sustained. The intent of the agreements was that the milk was to be sold in this State through complainant. Complainant would have serious difficulty in enforcing the performance of its agreements with any of its members residing in Connecticut. To pursue the individual members for breaking their agreements would create a multiplicity of suits and the remedy by damages would be inadequate. Furthermore, complainant would sustain irreparable injury if its agreements with its members were not performed by them. Respondents knew of these agreements and should not be permitted to profit by their breach. The most effective way of preventing a breach of the agreements is to enjoin a third party from delivering the milk of such members to anybody in this State, except to the person entitled to receive it under the agreements. The interest of such members in being able to sell their milk in this State may cause them to keep their agreements. In such circumstances the remedy by injunction is both practical and efficient.

In *Beekman* v. *Marsters, supra,* the court said: "Where the plaintiff proves that the defendant unlawfully interferes or threatens to interfere with his business or his rights under a contract, and further makes out in proof that damages

434

will not afford an adequate remedy, equity will issue an injunction." See also *Monte Vista Potato Growers Assn.* v. *Bond,* 80 Colo. 516; *Manchester Dairy System, Inc.* v. *Hayward, supra.*

Respondents argue that complainant's agreements with its members are void because they are not made to terminate within ten years as provided in the statute. This argument has no force as the claim that the agreements are *ultra vires* can be raised only by the State or by some member of the complainant association. *Northern Wisconsin Tobacco Pool* v. *Bekkedal, supra; Fort* v. *People,* 256 Pac. 325.

For these reasons the appeal is denied and dismissed; the decree appealed from is affirmed and the cause is remanded to the Superior Court for further proceedings.

*Wayne H. Whitman,* for complainant.

*Curran, Hart, Gainer & Carr, Henry C. Hart,* for respondents.