**WINN AVENUE WAREHOUSE, INC.,**
**Plaintiff,**

**v.**

**WINCHESTER TOBACCO WAREHOUSE COMPANY, Inc., the Burley House, Inc., P. O. Wilson, Ed Smith, Tom Jones and J. H. Waller, a partnership d/b/a the Farmers Warehouse, and the Winchester Tobacco Board of Trade, Defendants.**

**No. 1454.**

United States District Court
E. D. Kentucky,
Lexington.
Aug. 16, 1963.

**742**

Eblen, Howard & Milner, Amos H. Eblen, Samuel Milner, Lexington, Ky., for plaintiff.

Gess, Mattingly, Saunier & Atchison, William Gess, Jack Mattingly, Lexington, Ky., for defendants, Winchester Tob. Warehouse Co. Inc., and Tom Jones, and another d/b/a the Farmers Warehouse.

Marshall McCann, Jr., Winchester, Ky., for defendant the Burley House, Inc.

J. Smith Hays, Jr., Winchester, Ky., for the Winchester Tobacco Board of Trade.

HIRAM CHURCH FORD, Senior District Judge.

This is a civil action by which the plaintiff, invoking jurisdiction of the Court under 28 U.S.C.A. § 1337, charges that the defendants entered into a conspiracy to injure and destroy the plaintiff as a competitor in the sale of tobacco at auction in the loose leaf tobacco market at Winchester, Kentucky, and by their wrongful capricious, arbitrary, illegal and unreasonable acts, done in furtherance of the conspiracy, injured plaintiff in violation of the provisions of sections 1 and 2 of the Sherman Antitrust Act, 15 U.S.C.A. §§ 1 and 2, on account of which plaintiff seeks injunctive relief and treble damages under 15 U.S.C.A. § 15.

The plaintiff, Winn Avenue Warehouse, Inc., referred to in the Complaint as "Winn Avenue", and the defendants, Winchester Tobacco Warehouse Company, Inc., referred to in the Complaint as "Winchester", and The Burley House, Inc., referred to in the Complaint as "Burley", are Kentucky corporations having their principal place of business at Winchester, Kentucky, and P. O. Wilson, Ed Smith, Tom Jones and J. H. Waller are partners doing business at Winchester, Kentucky, as The Farmers Warehouse, referred to in the Complaint as "Farmers".

For a number of years the plaintiff and each of the above named defendants have owned and operated their independent warehouses for the sale of loose leaf tobacco in the established market at Winchester, Clark County, Kentucky. The plaintiff and the three warehouses named as defendants were the only warehouses operating in the market.

The specific acts of which plaintiff complains are set out in paragraphs X, XI, XII and XIII of the Complaint as follows:

**"X**

"Winchester and Farmers, as joint lessees, leased the warehouse owned by Burley for a period of ten years beginning in July 1961, and the lessees then requested the Board of Trade to transfer the basket capacity of Burley's warehouse to the two warehouses, owned and operated by the lessees.

"Plaintiff states on information and belief that Winchester and Farmers divided the 3359 basket capacity of Burley's warehouse between them in an inverse order of the basket capacity of the warehouses of the lessees and accordingly allotted 2000 baskets of the basket capacity of Burley's warehouse to Winchester and 1359 baskets of the basket capacity of Burley's warehouse to Farmers.

**"XI**

"Thereafter, and prior to October 3, 1961, the defendants, through their majority control of the Board of Directors of the Board of Trade,

caused the Board of Trade to approve the transfer of the basket capacity and sales quota of Burley's warehouse to Winchester's warehouse and Farmer's warehouse effective for the ensuing tobacco selling season, and also caused the Board of Trade to provide that sales during the ensuing tobacco selling season should be made in the warehouses in the Winchester Market on the basis of 30% of the basket capacity, although as stated in paragraph VIII hereof, the Board of Trade had provided that sales for the year 1961–62 should be made on the basis of 50% of capacity. The lessees have closed and do not propose to have sales of tobacco in the warehouse leased from Burley.

"XII

"After the approval by the Board of Trade of the transfer of the basket capacity and sales quota of Burley's warehouse, growers of tobacco who have sold, and who would sell, their tobacco on the Winchester Market were informed by letter of this transfer and that the persons who formerly managed the operation of Burley would be employed by the lessees.

"XIII

"The aforesaid acts of the defendants as described in paragraphs X, XI and XII hereof, were and are the result of an agreement and conspiracy of the defendants to injure and destroy the plaintiff as a competitor in the sale of tobacco in the Winchester Market and in violation of the provisions of 15 U.S.C.A., Sections 1 and 2."

The following facts are not in dispute:

1. That at all times herein referred to the Winchester tobacco market was duly designated by the Secretary of Agriculture, pursuant to 7 U.S.C.A. § 511d, as a market where tobacco was to be bought and sold at auction.

2. That in 1952 the Winchester Tobacco Board of Trade was duly incorporated as a non-stock and non-profit corporation under the provisions of K.R.S. § 273.160, for the purpose of managing, regulating and directing the sale of leaf tobacco in the Winchester market, and the plaintiff and the defendants, Winchester, Burley and Farmers operated their independent warehouses for the sale of loose leaf tobacco in accordance with the rules and regulations prescribed by the Board of Trade.

3. That most of the tobacco sold at each of the four warehouses in the Winchester market moves in Interstate Commerce.

4. That by contract of April 7, 1961, a copy of which is filed herein as plaintiff's Exhibit No. 30, Winchester and Farmers, as joint lessees, leased the warehouse owned by Burley for a period of ten years commencing July 1, 1961, together with a quantity of tobacco baskets and certain office equipment and furniture which Burley normally used during the tobacco season, and providing that, from the Burley allotment of 1680 baskets for tobacco sales, Winchester should receive 1000 baskets and Farmers 680 baskets, and that the persons then constituting the Board of Directors of the lessor should not contract or promote the construction of a new tobacco sales warehouse in Clark County, Kentucky, during the term of the lease.

5. Prior to October 1961, the Board of Trade approved the transfer of the basket capacity and sales quota of Burley's warehouse to Winchester and Farmers for and during the ensuing tobacco selling season; and further provided that sales during the ensuing tobacco selling season should be made on the basis of 30% of the basket capacity of each warehouse instead of on the basis of 50% of the basket capacity, as had previously been prescribed by the Board.

6. Under the method of operation the selling season usually began in November of each year and, with the exception of suspension of about two weeks during Christmas holidays, it continued until late January or early February of the following year. Only one set of Government

inspectors was authorized for the Winchester market and sales were conducted by only one warehouse at a time, and each warehouse was allotted one basket for each 30 square feet of floor space available. When one warehouse had sold its quota of baskets, the sale moved on to the next warehouse in the order of rotation, which had previously been fixed by agreement of the operators of the warehouses. The warehouse which was first in the order of sales during one season would be the last during the following season, with each of the other warehouses moving forward one position in the order of sales.

The defendants deny that they or any of them agreed, conspired or intended to injure the plaintiff in the operation of its business or to destroy it as a competitor in the sale of tobacco in the Winchester market; and deny that any actions by them constituted violations of sections 1 or 2 of the provisions of the Sherman Antitrust Act.

The case was tried to the Court without intervention of a jury and is submitted to the Court for judgment on the record presented.

The claim of plaintiff that the defendants agreed or conspired or intended to injure and destroy the plaintiff in the prosecution of its business as a competitor in the sale of tobacco on the Winchester market is not supported by a preponderance of the evidence.

Upon consideration of the evidence disclosed by the record and the able briefs filed by counsel for the respective parties, I am of the opinion that no acts of the defendants, disclosed by the evidence, were illegal or unreasonable and that none of them constituted *per se* a violation of the Sherman Antitrust Act. Standard Oil Co. of New Jersey v. United States, 221 U.S. 1, 51, 31 S.Ct. 502, 55 L.Ed. 619; Chicago Board of Trade v. United States, 246 U.S. 231, 238–239, 38 S.Ct. 242, 62 L.Ed. 683.

The crucial question which seems to me to be presented in this case is whether the actions of the defendants, or any of them, are shown by the evidence to be sufficient to constitute violation of the Sherman Antitrust Act.

Sections 1 and 2 of the Sherman Act provide that:

"1. Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal: * * *

"2. Every person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States, or with foreign nations, shall be deemed guilty of a misdemeanor, * * *."

Chief Justice White, in his classic opinion in Standard Oil Co. of New Jersey v. United States, supra, (221 U.S. p. 66, 31 S.Ct. p. 518, 55 L.Ed. 619) following the teachings of numerous cases interpreting the Sherman Antitrust Act, quoted from the opinion of Mr. Justice Peckham in Hopkins v. United States, 171 U.S. 578, 592, 19 S.Ct. 40, 43 L.Ed. 290, as follows:

*"There must be some direct and immediate effect upon interstate commerce in order to come within the Act.* (Emphasis added).

In International Shoe Co. v. Federal Trade Commission, 280 U.S. 291, 298, 50 S.Ct. 89, 91, 74 L.Ed. 431, the Court said:

" * * * the act deals only with such acquisitions as probably will result in lessening competition *to a substantial degree,* Standard Fashion Co. v. Magrane-Houston Co., 258 U.S. 346, 357 [42 S.Ct. 360, 66 L.Ed. 653]; that is to say, to such a degree as will injuriously affect the public." (Emphasis added).

In the recent case of United States v. Philadelphia National Bank, 374 U.S. 321, 83 S.Ct. 1715, 1738, 10 L.Ed.2d 915 (decided June 17, 1963), in respect to the

tests of legality under the Sherman Antitrust Act, the Court said:

"The statutory test is whether the effect of the merger 'may be *substantially to lessen competition*' 'in any line of commerce in any section of the country.' * * *

" * * * The proper question to be asked in this case is not where the parties to the merger do business or even where they compete, but where, within the area of competitive overlap, the effect of the merger on competition will *be direct and immediate.*" (Emphasis added).

It is not shown by sufficient evidence that any of the acts of the defendants resulted in lessening competition in interstate commerce to a substantial degree or "to such a degree as will injuriously affect the public", or otherwise directly or substantially affected interstate commerce; nor is it sufficient to show that defendants monopolized or intended to monopolize any part of interstate trade or commerce in the marketing of tobacco or that such was the plan, purpose or intention of the defendants or any of them.

With the cooperation of the Secretary of Agriculture under 7 U.S.C.A. § 511m, a new Winchester Tobacco Board of Trade, organized or to be organized pursuant to chapter 302, page 1041, of the Acts of the General Assembly of Kentucky of 1962 (K.R.S. §§ 248.015, 248.025, 248.035) is given ample power and authority to take such action as may be found necessary and appropriate to promote and regulate an orderly market at Winchester for the sale of tobacco at auction, which will be subject to review by Court procedure, as was done in Fayette Tobacco Warehouse Co. v. Lexington Tobacco Board of Trade, Ky., 299 S.W.2d 640. (See, Liberty Warehouse Co. v. Burley Tobacco Growers' Co-operative Marketing Ass'n., 276 U.S. 71, 48 S.Ct. 291, 72 L.Ed. 473).

Absence of sufficient proof to show that any of the acts of the defendants, directly or substantially, restrained or affected interstate commerce or to show that defendants monopolized or attempted to monopolize such trade or commerce, in the marketing of tobacco, or that such was the plan, purpose or intention of the defendants, or any of them, renders the proof insufficient to bring this action within the purview of the Sherman Antitrust Act.

For the reasons indicated, I am of the opinion that this case should be dismissed. United States v. Columbia Steel Co., 334 U.S. 495, 68 S.Ct. 1107, 92 L.Ed. 1533.

Counsel for defendants will prepare, serve and submit for entry judgment in conformity herewith.