## SCHUSTER et al. v. OHIO FARMERS' CO-OP. MILK ASS'N.

### No. 6165.

Circuit Court of Appeals, Sixth Circuit.

Oct. 10, 1932.

S. N. Weitz, of Cleveland, Ohio (John A. Elden and Thomas F. Ferris, both of Cleveland, Ohio, on the brief), for appellants.

Clan Crawford, of Cleveland, Ohio (Squire, Sanders & Dempsey, of Cleveland, Ohio, on the brief), for appellee.

Before MOORMAN, HICKS, and HICKENLOOPER, Circuit Judges.

HICKENLOOPER, Circuit Judge.

This is an appeal from a judgment of the District Court refusing to adjudicate the defendant an involuntary bankrupt in proceedings there pending. 11 USCA § 48.

The appellee, the Ohio Farmers' Co-operative Milk Association, is a corporation organized under the Ohio Co-operative Marketing Act, sections 10186-1 to 10186-30 of the General Code of Ohio. By its charter, issued under these sections, it was given very broad powers to engage in "any activity in connection with the marketing, selling, preserving, harvesting, drying, processing, manufacturing, canning, packing, grading, storing, handling, or utilization of any agricultural products produced or delivered to it by its members or others"; and of accomplishing these purposes either directly, by its own agents and employees, and with its own physical instrumentalities, or through the formation of or stock ownership in other corporations organized for profit under the general laws of the state. Such associations themselves are legislatively "deemed 'nonprofit,' inasmuch as they are not organized to make profit for themselves, as such, or for

their members, as such, but only for their members as producers" (Gen. Code § 10186-1), and the only question here presented is whether they are to be considered as "moneyed, business, or commercial" corporations which may be adjudged involuntary bankrupts under section 4b of the Bankruptcy Act (11 USCA § 22 (b).

Except for the above-quoted legislative pronouncement that co-operative associations are not organized for profit, and the inclination of some courts to limit the operation of section 4 of the Bankruptcy Act (11 USCA § 22) to those corporations which were expressly "organized for profit," that is, for the accumulation of surplus earnings to be distributed as dividends to stockholders [Cf. In re Dairy Marketing Ass'n of Ft. Wayne, Inc., 8 F.(2d) 626 (D. C. Ind.), and In re Weeks Poultry Community, Inc., 51 F.(2d) 122 (D. C. Cal.)], the present problem would not be difficult of solution. Obviously, the co-operative marketing association is organized for profit in the sense of financial benefit to its members. The element of departure from ordinary corporate economic practice is found in the fact that the financial gain is enjoyed by the members in proportion to the production, by each, of the products handled, rather than in proportion to the capital otherwise contributed by each to the conduct of the business; but this difference of economic principle governing the distribution of wealth cannot alter the fact that the sole incentive to membership in such an association is the financial benefit to be derived therefrom in the marketing of the farm products which the member is producing. There is nothing broadly eleemosynary in co-operative associations. They simply represent a banding together of producers for their common good, and the motive of each is pecuniary gain.

Nor do we think that the mere fact that the formation of such associations tends to benefit all who engage in agriculture, whether members or not, and thus adds to the common welfare of the community or nation, detracts from the position taken. This is a collateral benefit to the community as a whole which would inevitably attend the betterment of the condition of any substantial part of the population. We are concerned only with direct and immediate benefits, and these are enjoyed exclusively by association members, although such enjoyment may be postponed while the association accumulates a surplus, increases its working capital, acquires the real and personal property necessary for the conduct of its business, and the like. This emphasizes the view of the present issue given below.

It is to be noted that the Bankruptcy Act refers not to corporations for profit, but to "business or commercial" corporations, and it is quite conceivable that a co-operative association might be organized to function without itself engaging in the conduct of any business. In such event it would doubtless not be amenable to the Bankruptcy Act. Doubtless, also, if the chief purpose of a corporation be religious, charitable, or educational it will not come within the purview of the Bankruptcy Act notwithstanding that some acts of business or commerce are incidentally performed. But where the chief purpose of the corporation is to carry on trade or commerce in an established field, and to do this primarily for the financial benefit of those who have joined in its organization and in the conduct of its affairs, there is but little room for doubt that the corporation is a "business or commercial" one within the intendment of the Bankruptcy Act. The existence also of a public benefit has long been held not to affect this result. See Mr. Justice Clifford in Sweatt v. Boston, H. & E. R. Co., 23 Fed. Cas. 530, 533, No. 13,684, and compare, Rankin v. Florida, A. & G. C. R. Co. (D. C. Fla.) 20 Fed. Cas. 274, No. 11,567, and In re Deauville, Inc., 52 F.(2d) 963 (D. C. Nev.).

The conclusion here reached is further indicated by the fact that although such co-operative associations are in existence and practical operation in almost every state of the Union (see Liberty Warehouse Co. v. Burley Tobacco Growers' Co-op., 276 U. S. 71, 48 S. Ct. 291, 72 L. Ed. 473) and the large amount of business transacted by them has been known to the courts and presumably to Congress for a comparatively long time, yet they have not been expressly excluded from the operation of section 4b of the Bankruptcy Act in the manner in which municipal, railroad, insurance, and banking corporations were excluded by the amendment of 1910 (11 USCA § 22 (b). If it were not intended that they be deemed business or commercial corporations, such as they appear to be, it is to be assumed that Congress would have taken appropriate action to this end.

It is unnecessary, we think, to determine whether any of the business transacted by the appellee was ultra vires under the Ohio law. It is sufficient that appellee was both authorized to engage in, and in actual practice did engage in, business and commerce as these

terms are commonly understood; that this was done for the pecuniary benefit of the members of the association, all of whom were producers; and that the transaction of such business constituted the chief purpose, and the only expressed purpose, for the organization of the corporation. We are thus constrained to hold it to be a business and commercial corporation as these terms are used in the Bankruptcy Act.

Reversed and remanded.