## In re WILLIAM McKINLEY LODGE NO. 840, F. & A. M.

District Court, S. D. New York.
July 28, 1933.

The following is the report of Henry K. Davis, referee in bankruptcy acting as special master:

May 18, 1933, three creditors filed a petition against bankrupt, alleging debts due them in the aggregate sum of $1,000.

The petition contained the other statutory allegations and an order of adjudication was duly entered and Irving Trust Company duly appointed bankrupt's receiver.

May 26, 1933, Eva Kaplan, an intervening creditor, filed an answer denying the allegations of the petition and asking that the adjudication be set aside. Thereupon the District Court by its order dated June 23, 1933, referred to me certain specific questions raised by the said answer for hearing, testimony, and report.

In order to save the expense of a stenographic record, counsel agreed to a statement of facts dated July 14, 1933, herewith returned, which embodies the specific questions for the special master to determine.

In a letter to the special master, dated July 17, 1933, and a copy of which he has sent to the other parties, Mr. Essner, counsel for intervening creditor, states that although he substantially submits to the statement of facts, he cannot fully and conscientiously subscribe to that part of paragraph 7 of such statement wherein it is stated, among other things, that bankrupt "deviated from its original purpose by entering the field of commerce and by buying property"; counsel concluding that the above words are a conclusion of facts. The special master sees no reason why the statement should not be construed in the light of the suggestion made by counsel. In other words, whether there is justification in the statement for the words quoted will have to be determined from the

facts themselves. Reference is made to this matter at this time in order to complete the statement of facts.

Bankrupt is a Masonic Lodge, receiving its charter from the Grand Lodge of Masons of the State of New York May 7, 1903 (Paragraph 2 agreed statement).

The charter was exhibited at the hearing. There is nothing therein that has a material bearing other than the fact of the issuing of the charter at the date above stated under the hand and seal of the issuing officers.

The conclusion drawn from the by-laws offered in evidence is that the lodge is a fraternal order. They recite no agreement to pay death benefits and the statement of facts (paragraph 5) shows that the application for membership contains no such agreement. Article VII of the by-laws provides for relief of the needy, but it is apparent that such relief is granted voluntarily and not because of any contract requirement.

It is agreed that bankrupt was organized originally getting its charter in the way above stated solely for fraternal purposes. (Stat. par. 7).

The question then arises: What is its relation being so organized to bankruptcy under the statute? Section 4b of the Bankruptcy Act as amended in 1910 (11 USCA § 22 (b), provides as follows: "Any natural person, except a wage earner or a person engaged chiefly in farming or the tillage of the soil, any unincorporated company, and any moneyed, business, or commercial corporation, except a municipal, railroad, insurance, or banking corporation, owing debts to the amount of $1,000 or over, may be adjudged an involuntary bankrupt upon default or an impartial trial, and shall be subject to the provisions and entitled to the benefits of this act. * * *" (So amended June 25, 1910.)

The question at this stage is whether the bankrupt is an unincorporated company within the language of the statute quoted.

There is no doubt that a fraternal beneficial association may be adjudicated under the section quoted. In re Order of Sparta (C. C. A. 3d) 242 F. 235, 39 A. B. R. 523, Judge McPherson writing the opinion. The facts in this case differ from those in the case at bar, in that Sparta was a fraternal order issuing benefit certificates to its members. The court had no difficulty in finding that the Sparta Order was subject to bankruptcy.

There is a dearth of authority on this question, and what the court says as to what constitutes "any unincorporated company" is particularly in point. What Judge McPherson says also by way of dictum is helpful here (In re Order of Sparta, 242 F. page 238): "In a word, if 'any unincorporated company' includes at least a group of individuals doing 'business' in the same sense as business when carried on by a corporation, then such a company is certainly subject to the act. We repeat that we do not attempt to decide how wide the meaning of 'company' may be; we simply hold that in any event it is wide enough to include a 'business' company without a charter."

Bankrupt, however, did not stop with the granting of its charter from the Grand Lodge, so it is not necessary for us to consider what the result would be if this were the only fact of its existence.

The Benevolent Orders Law of New York (Consol. Laws, c. 3) provides, section 2, that "A lodge of Free and Accepted Masons duly chartered by and installed according to the general rules and regulations of the Grand Lodge of Free and Accepted Masons of the State of New York; * * * may elect * * * three trustees for such lodge, * * * and may file in the office of the secretary of state, a certificate of such election. * * *" Section 3 of said law gives said trustees authority under the direction of the lodge to take and hold property real and personal, and issue bonds for the purpose of paying for real estate.

A reading of this statute shows that it gives to fraternal orders practically the same powers in dealing with property that are a part of the incidents and rights of a business corporation.

This law was passed upon by Judge Ray in Re Carthage Lodge, No. 365, of the Independent Order of Odd Fellows (D. C.) 230 F. 694, 701, 36 A. B. R. 873. This lodge was a part of the Independent Order of Odd Fellows, a fraternal order of the same general purposes and characteristics as the Masons.

This lodge filed a voluntary petition in bankruptcy. Previously thereto it had availed itself of the privileges of the New York Benevolent Orders Law before recited. Judge Ray decided in this case that the filing of this certificate brought the petitioner within the definition of a corporation under section 1 (6) of the Bankruptcy Act (11 USCA § 1 (6), and accordingly he held in a thorough and well-considered opinion that this lodge had the right to file a voluntary petition. In the course of this opinion Judge Ray said:

"Within section 4a, read with section 1 (6) and section 1 (19) [11 USCA §§ 1 (6, 19), 22 (a)], all corporations are persons, and within the purview of the act, except municipal, railroad, insurance, and banking corporations, and entitled to the benefits of the act as voluntary bankrupts, and, as stated, the law does not concern itself with the nomenclature in the statute creating such corporations. * * * The question is: Is it a corporation within the meaning and intent and definition of the Bankruptcy Law? The Bankruptcy Law has prescribed what 'bodies' or associations of persons shall be deemed a corporation within its meaning, and this law is paramount.

"That an association of a considerable number of men under a common name, with a constitution and by-laws, and with power to elect governing trustees, and recognized by the statutes of the state as a single body or 'entity,' and given power to own real and personal property and sue and be sued, and act by its trustees duly elected as a single body, is a *body* having some of the powers and privileges of private corporations not possessed by individuals or partnerships, cannot be doubted."

The same reasoning it seems to me applies to a body in the same class against which an involuntary petition is filed.

It is conceded that bankrupt filed the certificate provided in the Benevolent Orders Law (Statement 5, 7). It also clearly appears that after the filing of the certificate the bankrupt erected a building known as a Masonic Temple at 454 West 155th street, this city (Stat. par. 7).

The statement of fact shows income and disbursements over a period of years from 1926 to 1932, inclusive (Stat. 3). The figures are grouped as income from lodge operations, that is, dues, etc., and income from building operation, that is, rentals, etc., and the same shows over this period gross income from lodge operation of $99,912.39 and from building operation $177,385.61. In the same period lodge expenses were $70,992.11 and building operation $194,329.88. These figures make it clear, it seems to me, that bankrupt was engaged extensively in business so as to make it subject to the bankruptcy act.

It is conceded that at its temple bankrupt rents lodge rooms, ball rooms, a gymnasium, meeting rooms, banquet rooms, etc., at agreed rentals, and such rentals are not limited to Masons (Stat. 7).

This business clearly differentiates this case from in Re Elmsford Country Club (D. C.) 50 F.(2d) 238, 239, 17 A. B. R. (N. S.) 558. In that case Judge Patterson said, holding that a membership corporation is not subject to an involuntary proceeding: "A membership corporation is one organized for other purposes than that of pecuniary gain (Membership Corporations Law, § 2, Consolidated Laws of New York, c. 35), and there is nothing to show that the club departed from its original purpose and entered the field of commerce."

In this case the proof is to the contrary. The bankrupt here availed itself of the rights given under the Benevolent Orders Law, erected a substantial building, and operated it as a gainful operation with the general public as its patrons in the same way that an office building or an apartment hotel is carried on and operated.

The cases cited by intervening creditor, viz., In re Chicago-Joplin Lead & Zinc Co. (D. C.) 104 F. 67; H. J. Quimby Freight Forwarding Co. (D. C.) 121 F. 139; Nollman & Co. v. Wentworth Lunch Co., 217 U. S. 591, 30 S. Ct. 694, 54 L. Ed. 895, and Toxaway Hotel Co. v. J. L. Smathers & Co., 216 U. S. 439, 30 S. Ct. 263, 54 L. Ed. 558, are not in point because they all have to do and construe section 4 of the Bankruptcy Act prior to its amendment to its present form in 1910.

It is under the act as amended in 1910 and in its present form that this case is considered.

The affidavits of officers of the lodge in a supplementary proceeding used by counsel for intervening creditor for argument in my opinion do not alter the legal conclusions that follow and flow from the facts here presented.

From all the facts and the law applicable, I must reach the conclusion that the petition herein was properly filed and all of the questions in the order of reference are answered in the terms of the foregoing opinion in the light of the agreed statement of facts.

It is accordingly reported that the answer of the intervening petitioner should be dismissed and the adjudication sustained.

Leo J. Margolin, of New York City (Michael Feiring, of New York City, of counsel), for petitioning creditors.

Joseph Henry Essner, of New York City for intervening creditor and objector.

Murray L. Jacobs, of New York City, for creditors and bondholders.

Harry Geist, of New York City, for bankrupt.

Harold E. Lippincott, of New York City, for receiver.

FRANK J. COLEMAN, District Judge.

In Bankruptcy. Motion to confirm report of special master upon the issues raised by the petition in bankruptcy and the answer of an intervening creditor. The only question argued was whether the bankrupt, an unincorporated company, was in business, so as to be included among the possible involuntary bankrupts. I am convinced that it conducted a regular course of transactions for the purpose of making a profit out of them and that these transactions were on a sufficiently large scale and sufficiently numerous to make the bankrupt a business company. These transactions were of far more economic importance to the alleged bankrupt than the purely fraternal transactions which were more closely connected with the primary object of the association. The fact that such profit as the lodge might make from the business transactions was not intended to be divided among the members did not prevent the lodge from being a business association.

Report of the special master is, therefore, confirmed. Settle order on notice.