In re MICHIGAN SANITARIUM &
BENEVOLENT ASS'N.

No. 22815.

District Court, E. D. Michigan, S. D.

Oct. 9, 1937.

Glen Lloyd and Wilber G. Katz, both of Chicago, Ill., for petitioning creditors.

George D. Welles and Fred E. Fuller, both of Toledo, Ohio, for Michigan Sanitarium & Benevolent Ass'n.

Ira A. Beck, of Battle Creek, Mich., for receiver.

TUTTLE, District Judge.

These proceedings were instituted by involuntary petition filed by representatives of three alleged creditors of Michigan Sanitarium & Benevolent Association under the provisions of section 77A and section 77B of the Bankruptcy Act, as amended (11 U.S.C.A. §§ 206, 207). The issues here arise on a motion filed by Michigan Sanitarium & Benevolent Association praying the court for an order to quash service of process and to set aside the return thereof and dismiss the petition on the ground "that said Michigan Sanitarium and Benevolent Association has not consented and does not consent to the filing of said petition or to the jurisdiction of the court herein, that said Michigan Sanitarium and Benevolent Association is not one of the kinds of corporations which are amenable to the provisions of the statutes pursuant to which these proceedings are attempted to be brought and cannot be subjected thereto in these proceedings, that this court as a court of bankruptcy is therefore without jurisdiction in these proceedings over its person or its property." The Association made a special appearance solely for the purposes of said motion.

According to the petition it appears that Michigan Sanitarium & Benevolent Association was duly incorporated by articles of association dated December 18, 1897, under the provisions of Act No. 242 of the Public Acts of 1863 of the state of Michigan (sections 10840 et seq., Compiled Laws of Michigan, 1915; also see sections 10077 and 10086, Compiled Laws of Michigan, 1929).

The Association, as appears from the provisions of the statute under which it was organized, and from its objects and purposes as stated in its articles of association referred to in the petition aforesaid, was a trustee corporation for philanthropic, humanitarian, charitable, and benevolent purposes, undenominational and nonsectarian in character. There is respectable authority for the proposition that the nature and character of a corporation, in so far as determining its amenability under the Bankruptcy Act or section 77B thereof is concerned, depends upon the character of its charter powers as evidenced by its articles of association and the laws of its creation rather than upon its activities. Gamble v. Daniel (C.C.A.8) 39 F.(2d) 447; Clemons v. Liberty Savings & Real Estate Co. (C.C.A.5) 61 F.(2d) 448; In re Union Guarantee & Mortgage Co. (C.C.A.2) 75 F.(2d) 984 cert. denied Union Guarantee & Mortgage Co. v. Van Schaick, 296 U.S. 594, 56 S.Ct. 142, 80 L.Ed. 421); In re Prudence Co., Inc. (C.C.A.2) 79 F.(2d) 77 (cert. denied Egbert v. Callaghan, 296 U.S. 646, 56 S. Ct. 247, 80 L.Ed. 459).

However, whether the articles and laws of creation are controlling in this respect, or the activities of the Association, is of no moment here, for the reason that there can be no question but that from the time of its incorporation the activities of the Association have been confined to those calculated to further the objects and purposes of the Association as set forth in its articles. Indeed, the petition of the creditors herein alleges that "since its incorporation the debtor has been continuously engaged in carrying out the foregoing objects" (those set forth in the articles), and this the court finds to be true.

The petition also sets forth the objects for which the Association was organized as they appear in its articles of association, as follows:

"To found a hospital or charitable asylum within the State of Michigan for the care and relief of indigent or other sick or infirm persons, at which institution, may be received also patients and patrons who are able to and do pay for the benefits there received, and which institution shall devote the funds and property acquired and received by it from time to time from all

sources, exclusively to maintaining itself, improving its condition and facilities, extending its benefits and usefulness and facilitating and promoting its purposes, by such sanitary dietetic, hygienic and philanthropic reforms and efforts as are germane or auxiliary thereto; all of its said purposes being undenominational, unsectarian, philanthropic, humanitarian, charitable and benevolent, and in no manner directly or indirectly for private profit or dividend paying, to anyone."

It therefore appears both from its charter powers and its activities, as set forth in the petition of the creditors herein, that the Association is nonprofit, nondividend paying, and truly eleemosynary in character, all of the property and assets of the Association being owned by the Association, and being used exclusively in carrying out the objects of the Association hereinbefore mentioned. It further appears, and the court finds, that the members of the Association have no interest in its properties, its assets, or its earnings, either directly or indirectly.

The Association, in the carrying out of its foregoing objects and purposes, owns and operates Battle Creek Sanitarium at Battle Creek, Mich., which is a large sanitarium or hospital, at which sick or infirm persons are received for treatment. To those who are able to pay, it charges for the services so rendered, and for those who are unable to pay, it renders its services for no compensation to the extent of its ability so to do. It has the right to, and has received, gifts from various charitable and philanthropic sources, and has devoted the same to the furtherance of its objects and purposes, as enumerated in its articles. All of the money and property received by way of gifts or as compensation for services rendered from those who are able to pay and from any other sources has been used by the Association strictly in the carrying out of its objects and purposes, and not for profit earning or dividend paying to any person, firm, or corporation. It has at all times, as contemplated by its stated objects, attempted to extend its usefulness and the use of its facilities, as well as its dietetic, sanitary, hygienic, and medical doctrines of right living, and the duty of taking care of one's health, to as many people as could be reached and served. As the number of those who have made use of its facilities has increased, the proportionate number of those who are able to pay part or full compensation for such services has also proportionately increased, and likewise its earnings have increased; but whatever its earnings may have been, they have at all times been exclusively used in the furtherance and improvement of its facilities, and in extending and furthering its benefits and usefulness, facilitating, promoting, and extending its objects and purposes, and not for the purpose of financial gain or otherwise benefiting anyone.

Since February 4, 1933, said Association has been in receivership on the equity side of this court, and the court has become intimately acquainted with the Association, its objects and purposes, the principles for which it stands, and the methods used by it in extending its benefits and usefulness and promoting its objects and purposes. Under the receivership, this court, in order to insure the greatest return for the benefit of creditors interested in the receivership, has caused certain of the facilities of the Association, such as the Sanitarium Union Building and certain surplus rooms in the sanitarium building not currently required to be used by those seeking treatment there, to be rented to persons other than patients, but such transactions are relatively few and the income therefrom is proportionately small, and the course has in no way resulted in the Association deviating from its objects and purposes, and the order of the court has been prompted solely by the exigencies of the situation in order to bring into the receivership the greatest possible return under all the circumstances.

It is conceded by all that the debtor could invoke the provisions of the Bankruptcy Act proper (11 U.S.C.A. § 1 et seq.) on voluntary petition, and it is argued by the petitioners that the Association is likewise subject to said act against its will on involuntary petition as a "business" corporation, within the meaning of section 4, subdivision b of the Bankruptcy Act (as amended 11 U.S.C.A. § 22); it being conceded that it is neither a "moneyed" or "commercial" corporation within the provisions of said section.

The real issue involved in this case is whether an Association, which is one not for profit earning or dividend paying in any respects, and which is organized exclusively for charitable and benevolent purposes, but which charges compensation for its services from those who are able to pay and which is necessarily required to hire and employ a considerable group of people in the furtherance of its benevolent objects and purposes, and which relies upon and

uses such moneys as are received from those who are able to pay and by way of gifts and bequests for the purpose of furthering said objects and purposes and broadening the scope of its activities, is in fact conducting a business so as to become a "business corporation" such as is referred to in section 4b of the Bankruptcy Act. This obviously depends upon the intent of Congress in the enactment of section 4 of the Bankruptcy Act, as amended (11 U.S.C.A. § 22), read in conjunction with other pertinent portions of the act.

The court holds that a charitable and benevolent association such as Michigan Sanitarium & Benevolent Association, eleemosynary in character, not operated for any profit or private gain or benefit to any one, is not a "business corporation," and that Congress did not intend that an association of that character could or should be subjected to involuntary proceedings in bankruptcy against its will and without its consent.

It was said by the Circuit Court of Appeals for this circuit in Schuster et al. v. Ohio Farmers' Co-operative Milk Association, 61 F.(2d) 337, at page 338, that:

"If the chief purpose of a corporation be religious, charitable, or educational it will not come within the purview of the Bankruptcy Act notwithstanding that some acts of business or commerce are incidentally performed."

Likewise, in Gilbert's Collier on Bankruptcy, Second Edition, page 148, it is said that:

" * * * Because of the limitation to 'moneyed, business or commercial corporations,' membership corporations, incorporated for other than business or commercial purposes, may not be adjudicated involuntary bankrupts."

Likewise, Judge Patterson of the Southern District of New York held in Re Elmsford Country Club (D.C.) 50 F.(2d) 238, that a membership corporation not organized or engaging in business for pecuniary gain could not be adjudged an involuntary bankrupt.

The case of In re William McKinley Lodge (D.C.) 4 F.Supp. 280, 281, has been cited as being to the contrary, but the case is not in point for numerous reasons, among which is that the debtor was "an unincorporated company."

The rule that an eleemosynary corporation, charitable and benevolent in character, not operated for pecuniary gain, is not a "business corporation" so as to be amenable to the provisions of the Bankruptcy Act on involuntary petition, is in accordance with good, sound, common sense. Congress saw fit to specifically except farmers and laborers from involuntary bankruptcy, and there is far less reason for its excepting laborers or farmers than for excepting an eleemosynary association such as Michigan Sanitarium & Benevolent Association, which, generally speaking, operates for the good of humanity without hope of private gain or reward to any individuals. All of the common-law remedies for the collection of debts are available to those who deal with farmers, laborers, and this kind of corporations. Congress desired to encourage persons philanthropically inclined to give their money and their time and services through an eleemosynary corporation in promulgating charitable and benevolent, philanthropic, and humanitarian doctrines, and to that end we believe so drafted the Bankruptcy Act as not to include corporations of this character, in which those who contribute their moneys and their time and effort do so without hope of monetary gain or any reward except that gained through seeing the objects and purposes of the corporation successfully carried out.

Such a corporation fundamentally is entirely different from a business or commercial corporation. In one, a man invests his money and efforts so that he may share in its profits; in the other, he gives his money so that the objects and purposes of the corporation may be furthered. He receives in return no monetary interest in the corporation. In the first, the primary purpose is to conduct a business for the purpose of making money. In the second, the primary purposes are philanthropic, humanitarian, charitable, and benevolent in character. Not only are the purposes different, but the emphasis is likewise different. It is not easy to define this difference in words, but it stands out readily in one's mind, as it undoubtedly did in the minds of the lawmakers, and readily furnishes a basis for classification for bankruptcy purposes. There are a variety of reasons, most of them apparent, why such a corporation should be specially dealt with. Farmers do business, a laboring man does business, and yet they are exempted. There is no reason why a corporation, such as the respondent association here, should

be held to be a business corporation merely because in the carrying out of its objects and purposes it performs business transactions, which are, however, not for any one's benefit or pecuniary gain.

Bankruptcy is a statutory proceeding, and if such an involuntary petition may be filed against an association of the character of Michigan Sanitarium & Benevolent Association, the right so to do must be found within the terms and provisions of the act. The court finds no such provision. Like a farmer and a laborer, such a corporation may file a voluntary petition, but like a farmer and a laborer, such association is exempt from involuntary proceedings under the provisions of the act.

▆▆ I adopt the rule referred to by Judge Slick in Re Dairy Marketing Association (D.C.) 8 F.(2d) 626, syllabus 1, viz., that the provisions of the Bankruptcy Act relating to corporations subject to the act are to be strictly construed, and only such corporations as are clearly within the described classes of section 4b may be placed in bankruptcy on involuntary petition. This is but a corollary to the principle that the provisions of the act are to be construed liberally in the debtor's favor. Farmers' Sav. Bank v. Allen, 41 F.(2d) 208 (C.C.A.8), Syl. 11; In re Lee, 51 F. (2d) 394 (D.C.Ga.); In re McFarland, 49 F.(2d) 342 (D.C.Wash.), Syl. 3.

▆▆ I am unable to find that a corporation of the kind and character of Michigan Sanitarium & Benevolent Association is the kind of a corporation which is subject to the provisions of the act upon involuntary petition.

The next question presented is as to whether such a corporation as the debtor may, notwithstanding its nonamenability to the provisions of the Bankruptcy Act proper upon involuntary petition, nevertheless be subjected to reorganization against its will and without its consent under the provisions of sections 77A and 77B of the Bankruptcy Act. This, like the answer to the first question herein decided, depends upon the intent of Congress as expressed in sections 77A and 77B, read in conjunction with the applicable portions of the Bankruptcy Act not affected by said amendatory sections. Since such a charitable and benevolent, nonprofit, and nondividend paying corporation is not amenable upon involuntary petition under the Bankruptcy Act proper, if it is to be made amenable under sections 77A and 77B thereof a new class of rights in favor of creditors of such corporation is thereby created. If such new rights have been created, they must be found in the language and context of sections 77A and 77B. In this connection the language employed by Congress in section 77A, 11 U.S.C.A. § 206, is illuminating. It is as follows:

Section 77A. "Additional jurisdiction. In addition to the jurisdiction exercised in voluntary and involuntary proceedings to adjudge persons bankrupt, courts of bankruptcy shall exercise original jurisdiction in proceedings for the relief of debtors, as provided in section 77B [Section 207 of this chapter] of this Act."

▆▆ Thus from the language of this section of the act itself it appears that the major and primary purpose of the act is to afford relief to a debtor who of its own volition desires to invoke its provisions. I concur with the holding of Judge Nields in Re National Department Stores, Inc., 8 F.Supp. 19 (D.C.Del.) and the unreported opinion of Judge Faris in Re Laclede Gas Light Co.[1] Paragraph 3 of the syllabus of Judge Nields' opinion is as follows:

"Provision of Bankruptcy Act providing for reorganization of corporations was primarily intended for benefit of those corporations which voluntarily might desire to take advantage of its provisions, and proceeding by creditors should be countenanced only in most compelling cases."

The portion of the opinion of Judge Faris referred to, supra, appears in the body of Judge Nields' opinion as follows:

"I adopt the construction given section 77B by Judge Faris: 'The Amendment under which this proceeding was brought was, in my opinion, primarily and largely intended for the benefit of those corporations who voluntarily might desire to take advantage of its provisions. Concededly, there are provisions which oftentimes would permit creditors to do this, exactly as here sought, or by a proceeding similar to this at bar. I am of opinion, however, that the latter proceeding should be countenanced only in most compelling cases. This for the reason that to permit any three creditors having the qualifications required by the Act, to come in and disrupt every struggling business, would soon

---

[1] Oral opinion not for publication.

result in a series of unseemly scrambles which would be disastrous to business, and well-nigh a disgrace to the courts.' In re Laclede Gas Light Co. (U.S.D.C.)."

See, also, syllabus 7 of In re Philadelphia Rapid Transit Co., 8 F.Supp. 51 (D.C. Pa.), decree affirmed Wilson v. Philadelphia Rapid Transit Co. (C.C.A.) 73 F.(2d) 1022.

I have already pointed out the corollary principle that the Bankruptcy Act is to be strictly construed as to amenability, and includes only those corporations which are clearly within the described classes. The rule of strict construction has been applied to section 77B, and in Duparquet Huot & Moneuse Co. v. Evans, 297 U.S. 216, 56 S.Ct. 412, 80 L.Ed. 591, resulted in the Supreme Court strictly limiting the meaning of the term "equity receivership" so as to exclude a receiver appointed in a mortgage foreclosure action, even though he had been appointed by an equity court in the exercise of its equity powers.

■ Bearing these principles in mind, therefore, I find nothing in the act to indicate that Congress in the enactment of sections 77A and 77B intended anything more than that those who are amenable to the provisions of the Bankruptcy Act proper on voluntary petition shall likewise be amenable to the amendatory 77A and 77B sections on voluntary petition, and that those (and only those) who are amenable to the Bankruptcy Act proper (11 U.S.C.A. § 1 et seq.) on involuntary petition should likewise be amenable on involuntary petition under the amendatory sections 77A and 77B, except as to those classes specifically excepted. Individuals, of course, are not subject to the provisions of these amendatory sections, because there is no language therein providing for such amenability. And I find nothing in the act evidencing any intent to broaden or enlarge either the scope of sections 4a and 4b of the Bankruptcy Act, as amended (11 U.S.C.A. § 22 (a, b) as to those who shall be amenable on involuntary petition.

It has been argued that the provisions of the Bankruptcy Act proper with respect to amenability have been enlarged and broadened so as to make subject to involuntary section 77B proceedings all corporations which may become voluntary or involuntary bankrupts under sections 4a and 4b of the Bankruptcy Act. The language relied upon is as follows:

"Three or more creditors who have provable claims against any corporation which amount in the aggregate, in excess of the value of securities held by them, if any to $1,000 or over may, if such corporation has not filed a petition or answer under this section, file with the court in which such corporation might file a petition under this section, a petition stating that such corporation is insolvent." Section 77B(a), 11 U.S.C.A. § 207(a).

It is clear that this language does not in fact mean any and all or every corporation, for that would include municipal, railroad, insurance, or banking corporations, and it seems reasonably clear that those corporations which by reason of being within the exceptions of section 4a of the Bankruptcy Act proper could not file a voluntary petition, could not be intended to be subject to involuntary petition, notwithstanding the language used. Such is the holding of a number of the District Courts. In re National Surety Co. (D.C.) 7 F.Supp. 959; In re New York Title & Mortgage Co. (D.C.) 9 F.Supp. 319; In re National Mortgage Corporation (D.C.) 17 F.Supp. 54.

■ However, it is claimed that the provision that creditors may file an involuntary petition "with the court in which such corporation might file a petition under this section" means that an involuntary petition under section 77B may be filed against any corporation which has the right to file a voluntary petition. I cannot agree with this contention. The language of the provision relied upon is, as it clearly indicates, merely a venue provision, specifying the court in which an involuntary petition may be filed against a corporation of the kind and character which under section 4b of the Bankruptcy Act may be subjected to involuntary proceedings in bankruptcy. This it does by reference back to the earlier provision of the act reciting the venue for voluntary petitions, which provides:

"The petition shall be filed with the court in whose territorial jurisdiction the corporation, during the preceding six months or the greater portion thereof, has had its principal place of business or its principal assets, or in any territorial jurisdiction in the State in which it was incorporated." Section 77B(a), 11 U.S.C.A. § 207(a).

All that the language relied upon does is to say that, given a corporation of the

type which might be subjected to involuntary bankruptcy proceedings under section 4b of the Bankruptcy Act, the involuntary petition may be filed against such corporation in the court in which section 77B provides a voluntary petition might be filed. This language is the sole language of the act relied upon as rendering this association amenable to the provisions of section 77B, and I find nothing therein which in any way indicates an intention to so broaden and enlarge the scope of the Bankruptcy Act as to render amenable to 77B on involuntary petition those debtor corporations who would not otherwise be amenable under the provisions of section 4b of the Bankruptcy Act proper. If the intent had been so to broaden and enlarge the statute, it would clearly and plainly have said so. I do not believe the act to be ambiguous in this regard, but, if it be ambiguous, the principle of construction that it shall be liberally construed for the benefit of the debtor and strictly against amenability leads to the same conclusion.

The construction given the act by the court is further borne out by the provisions of subdivision 8 of clause (c) and clause (k) of section 77B, 11 U.S.C.A. § 207(c), (8), (k), which provide, in substance, that if a plan of reorganization is for some reason not proposed or accepted or confirmed, the court may direct the estate to be liquidated as under the provisions of the Bankruptcy Act proper. Necessarily implicit in these provisions is the intention that a court acting under the jurisdiction and provisions of sections 77A and 77B shall permit an attempt to reorganize, and if those attempts fail, it may in those same proceedings, without any shifting back and forth as between courts, liquidate the estate as it would have liquidated it had the proceedings had their inception in bankruptcy proper in the first instance. Thus there would finally be an involuntary bankruptcy proceeding under section 4b against a corporation which by the terms of section 4b is not amenable to such a proceeding. I hold that Congress did not intend to amend section 4b by any such oblique and indirect method. The fact that whether or not such liquidation is in fact ordered remains a matter of discretion with the court is not a compelling circumstance in favor of the construction contended for by petitioners, for, as the Supreme Court recently said in Duparquet Huot & Moneuse Co. v. Evans, 297 U.S. 216, 56 S.Ct. 412, 416, 80 L.Ed. 591:

"True it is also that a court receiving a petition for reorganization in invitum may approve or disapprove it, and that any hardship growing out of extreme or unusual situations may thereby be averted. Even so, the search at the moment is for a definition of an equity receivership that will tend to minimize anomalies, and give consistency and coherence to the statutory rule. There is little persuasion in an argument that in despite of all anomalies the system, if it is well administered, may manage to survive."

The whole intent and purport of section 77B was to create additional remedies upon voluntary petition for those corporations amenable to the Bankruptcy Act proper upon voluntary petition, and upon involuntary petition against those corporations amenable to the Bankruptcy Act proper upon involuntary petition, but in no sense to enlarge or broaden the scope of the corporations against whom such remedies might be employed.

An eleemosynary corporation such as the Michigan Sanitarium & Benevolent Association, charitable and benevolent in purpose, and in no manner directly or indirectly for private profit or dividend paying to any one, may avail itself of the provisions of sections 77A and 77B upon voluntary petition, but it cannot be subjected to such provisions against its will and without its consent upon involuntary petition.

I hold that this court is without jurisdiction to proceed upon the involuntary petition herein. An order dismissing the petition in accordance with the motion may be presented.