**In re MISSCO HOMESTEAD ASS'N, Inc.**

**No. 2131.**

United States District Court
E. D. Arkansas, Jonesboro Division.

Sept. 20, 1949.

Proceeding in the matter of the Missco Homestead Association, Inc., alleged bankrupt.

---

512

Bruce Ivy, Osceola, Ark., and Max B. Reid, Reid & Roy, Blytheville, Ark., for the alleged bankrupt.

James T. Gooch, U. S. Atty., G. D. Walker, Asst. U.S. Atty., Dan P. Chisholm, Regional Attorney, Office of the Solicitor, U. S. Department of Agriculture, and Sid-

ney D. Williams, Attorney Office of the Solicitor, U.S. Department of Agriculture, Little Rock, Ark., for the petitioning creditors.

TRIMBLE, Chief Judge.

The alleged Bankrupt, The Missco Homestead Association, Inc., was incorporated by an order of the Circuit Court of Mississippi County, Arkansas, entered on January 10, 1939. The petition was signed by five persons, all being tenant farmers or share-croppers of that vicinity. Along with the petition there was filed articles of incorporation and by-laws, with all other proper documents. These disclose that the board of directors elected included two of the incorporators and three employees of the U. S. Department of Agriculture.

The proposed articles of incorporation or association set forth in great detail the purpose of the organization, and the powers it might exercise in the carrying out of its purpose. The purpose of the association is stated: "The purpose of this association is to rehabilitate and render self-supporting the families of its members (rural families of low income) by assisting or participating in the establishment, leasing, development and maintenance of farms, homes and other facilities, including necessary or appropriate co-operative and community facilities and enterprises, for such families on the lands now or hereafter leased or owned by the Association; and to do and perform all acts and things necessary, convenient, useful or incidental to the accomplishment of this purpose.

The powers conferred are stated as follows: "In furtherance of such purpose and of the general powers conferred by the laws of the State of Arkansas, but not in limitation thereof, this Association shall have the power to do any and all of the following enumerated things:

Here there follows under thirteen sub-heads a list of the powers to be exercised, many of them things which are usually and customarily performed by any business association or corporation, including:

To carry on any lawful agricultural, dairy, mercantile, mining, manufacturing, or mechanical business; to acquire or assist in acquiring in any manner, dispose of or assist in disposing of in any manner, construct, build, establish, own, equip, operate, maintain, improve, administer and supervise any buildings, plants, mills, gins, warehouse, dairies, restaurants, gardens, factories, industries, commercial establishments, farms, pasturages, homesteads, community and cooperative enterprises or activities of any kind, and power, light, gas and water plants or telephone systems for the purpose of manufacturing for and furnishing to its members, power, gas, water and telephone service, and to perform any other necessary or desirable operations or functions in connection therewith; and many other things as set out in the footnote.[1]

A short history of the relief set-up, of which this association was the final outcome, will be found in the footnotes.

---

1. Petition to Withdraw as
Petitioning Creditor

Comes Garland Catt, whose name appears as a petition creditor on the involuntary petition in bankruptcy filed March ninth, 1945 against Missco Homestead Association, Inc., and states to the Court that he now desires to withdraw his name from said petition and to have the petition dismissed. (Here follows the prayer).

Statement of Relief Program (copied from brief of alleged bankrupt).

Although Missco was not organized until January, 1935, the same 200 to 300 families had been located by the government on Mississippi County lands in 1935. That year, acting through Arkansas Rural Rehabilitation Corporation, the government rented approximately 5500 acres of land from Lee Wilson & Co., Federal Emergency Relief Administration was succeeded by Resettlement Administration, and that by Farm Security Administration, and that by Farm Home Administration. Under the Farm Security when the Arkansas Rural Rehabilitation Administration was liquidated, the Farm Security Administration, then the Missco (Mississippi County) Home Association, Inc., was established.

The order of the court incorporating the Association in part reads as follows:

"Upon examination of the petition it is found that said petition prays that the court enter an order incorporating the Missco Homestead Association, Incorporated, in accordance with the statutes referred to above. (2252–2261, Pope's Digest of Arkansas, 1937).

"It is, therefore, ordered and adjudged that the said petition be granted as prayed for in said petition."

These sections of the statutes of Arkansas are found in Pope's Digest, in a subchapter headed "Benevolent Associations."

On March 9, 1945, an involuntary petition in bankruptcy was filed in the office of the Clerk of this Court at Little Rock, Arkansas, in the Western Division of this District. The petition alleged that the principal place of business of the alleged bankrupt, and all its assets practically, was at Wilson, Arkansas, which is in the Jonesboro Division of this District. The Clerk of the court at Little Rock marked the petition filed as of March 9, 1945, immediately mailed it to the office of the Clerk at Jonesboro, where it was received on March 12, 1945, and the deputy clerk in that division issued a subpoenae on March 12, 1945, and placed the same in the hands of the United States Marshal for service.

This petition is in the usual form, and the petitioning creditors were the United States of America, and six individuals. Upon its face this petition was sufficient in number of petitioning creditors, allegations of insolvency and alleged acts of bankruptcy.

· The Association filed an answer, in which it denied that it was a person, or corporation which may be adjudged a bankrupt in involuntary proceedings and denying that it was a moneyed, business or commercial corporation within the purview of the Bankruptcy Act. It alleged affirmatively that it was a benevolent, non-profit organization, organized under Sec. 2252–2261 of Pope's Digest of the Statutes of Arkansas 1937. It also denied the allegations of indebtedness to the six individual petitioning creditors. While it denied insolvency in this answer, it later stipulated its insolvency.

The answer also sets up the affirmative defense that the individual petitioning creditors, if they were creditors, were induced to join in the petition by agents of the U. S. Department of Agriculture, under such circumstances, and by such representations as amounted to fraud, misrepresentation, or misunderstanding, that they should be permitted to withdraw, or the court should strike their names from the petition. Theretofore these individual petitioners had filed motions to withdraw their names. After the filing of this answer other alleged creditors of the association have filed petitions for leave to intervene as petitioning creditors. The Association has objected to all of these petitions seeking intervention, and some of them have filed motions to withdraw their petitions. The substance of the motions to withdraw will be found in the footnotes.

The Association in its brief states the main question upon which it relies to dismiss the petition, as follows:

(1) Is the alleged bankrupt a money, business or commercial corporation which can be thrown into involuntary bankruptcy?

(2) Have three creditors, necessary to confer jurisdiction, joined in the petition?

(3) If the individuals whose names appear on the petition were creditors, had they been induced to join by fraud or misunderstanding so as to permit them to withdraw, or so as to authorize the court to strike their names from the petition?

In addition to the three propositions above there are in the case other questions which will be noted at the proper place herein.

The parties have entered into two stipulations, and have introduced evidence before the court, and the cause is now submitted upon the question of adjudication. There have been many delays in the prosecution of this petition, most of the time being consumed in an effort to settle the matter by offers and counter-offers in compromise. Also a great deal of time has been spent in efforts to secure infor-

mation from sources without the jurisdiction of the court.

Immediately upon its incorporation, the association proceeded in an effort to effectuate the purpose of its incorporation. The by-laws provide for the payment of a membership fee of $1.00 and the issuance of membership certificates. They, together with the articles of association, set forth the manner of distributing the income of the association, providing that the net earnings shall be distributed ratably to the patrons of the association's services in proportion to the value of the goods and services purchased during each fiscal year, and providing for payment of a refund to any member whose membership is terminated, in the same manner as payments shall be made to members.

In the operation of the Association it did a very considerable business. It entered into a five year lease for 6191.40 acres of land, at an annual rental of $61,914, and during the term of the lease this rental was paid, amounting to more than $300,000. It borrowed from the United States, at one time $111,120, and at another time $38,500, and evidenced the indebtedness by the execution and delivery of promissory notes, and secured them by chattel mortgage. These sums were not grants but loans. Upon these loans the Association paid $114,-655.76, divided between principal and interest. With the rentals paid this makes payments to only two of its creditors of a sum in excess of $414,000. In addition to this sum, the Association had on deposit in a Little Rock bank $22,064.21, and had made other payments, which are alleged to be preferential. It thus appears that in carrying on its business the Association received from its operations large sums of money.

From the evidence it appears that some of the business done by the Association, consisted of leasing lands, as set out, re-letting these lands to its members and patrons, operating a blacksmith shop for the public, disposing of crops raised on these lands, buying and selling farm supplies, such as insecticides, seeds, and so forth.

The Association had no cash capital; its members contributed no cash capital to it, as they paid only a membership fee of $1.00, and the Association was insolvent from the outset. It immediately entered into a lease by which it obligated itself to pay a large sum annually as rental upon lands upon which to operate, with no visible assets to meet such an obligation. It borrowed a large sum of money from the United States, and gave a chattel mortgage upon property which it did not yet own, but to be thereafter acquired. The only source from which these obligations could be met was sub-renting and collecting the rents from these lands, as its members had no cash capital to contribute, and no-where was there a provision by which they could have contributed such cash capital.

(1) Is the alleged bankrupt a money, business or commecial corporation which can be thrown into involuntary bankruptcy?

The distinction between a business corporation and an eleemosynary corporation, is well stated in the case of In re Michigan Sanitarium & Benevolent Association, D.C., 20 F.Supp. 979, Syl. 1, as follows: "As respects a 'business corporation,' one invests money and efforts so that he may share in profits of corporation, while, as respects an 'eleemosynary corporation,' one gives money so that objects and purposes of corporation may be furthered, and receives in return no monetary interest in corporation. The primary purpose of a 'business corporation' is to conduct business for purpose of making money, while primary purposes of 'eleemosynary corporation' are philanthropic, humanitarian, charitable, and benevolent in character."

Two rules of decision have been applied and followed by the courts in determining whether a corporation is a moneyed, business, or commercial one within the meaning of that phrase expressed in the Bankruptcy Act, 11 U.S.C.A. § 1 et seq., namely, (1) the so-called State Classification Rule, and (2) the Bankruptcy Rule. Under the State Classification Rule,

the law pursuant to which the corporation was organized is controlling in determining the character and nature of a corporation as a moneyed, business or commercial enterprise. Under the Bankruptcy Rule, the courts base their determination of the nature and character of the corporation upon the powers actually granted to it by its charter and the activities and operations actually conducted by it.

Counsel for the parties have cited no cases from the Supreme Court of the United States directly in point, with a direct holding on the question. But the court is not left wholly in the dark, or without a guide as to what would be the holding of that court should the question reach them for decision.

In the case of Wragg v. Federal Land Bank, 317 U.S. 325, 328, 63 S.Ct. 273, 275, 87 L.Ed. 300, the court said: "Respondent argues that under Alabama statutes and decisions the statutory right of redemption after foreclosure is defined as a 'personal privilege' rather than as 'property or property rights' (Title 7, § 743), and hence is not within the jurisdiction of the bankruptcy court in a farmer-debtor proceeding. But § 75 [11 U.S.C.A. § 203] prescribes its own criteria for determining what property interests may be brought within the jurisdiction of the court. In the interpretation and application of the Bankruptcy Act as in the case of other federal statutes, federal not local law applies. Prudence Realization Corp. v. Geist, 316 U.S. 89, 95, 62 S.Ct. 978, 982, 86 L.Ed. 1293, and cases cited. It is for the bankruptcy court to determine, by reference to the provisions of the bankruptcy statute, what rights created by state law—regardless of the characterization which may be applied to them by state statutes and decisions—are within the jurisdiction of the bankruptcy court. United States v. Pelzer, 312 U.S. 399, 402–403, 61 S.Ct. 659, 660, 661, 85 L.Ed. 913.

In the case of In re Wisconsin Co-Operative Milk Pool, 7 Cir., 119 F.2d 999, 1002, it is said: "(4) It is likewise urged that the statutes of Wisconsin indicate that the liquidation of such a corporation is to be left to the state courts and that it was the purpose of Congress to allow the state policy to persist. The argument fails when we remember that paramount bankruptcy power is, under the Constitution, lodged in the Congress; that its enactment is nation-wide in effect and *supersedes any state statute interfering therewith.*" (Italics supplied.)

In this case petition for writ of certiorari was filed in the Supreme Court, and the petition denied. Wisconsin Co-operative Milk Pool v. First Wisconsin Nat. Bank, 314 U.S. 655, 62 S.Ct. 105, 86 L.Ed. 525.

Counsel for the Association have cited cases from the Court of Appeals for the Second Circuit, and from District Courts, but, in fact none of these took into consideration the case of Wragg v. Federal Land Bank, supra, or In re Wisconsin Co-operative Milk Pool, supra. In the Matter of Elmsford Country Club, Alleged Bankrupt, 50 F.2d 238, was decided by a District Court in 1931; In the Matter of Weeks Poultry Community, Inc., Bankrupt, 51 F.2d 122 was decided by a District Court in 1931; In the Matter of Union Guarantee & Mortgage Company, Debtor, 75 F.2d 984, was decided by the Court of Appeals, Second Circuit, in 1935. All of these cases were decided before the decision by the Supreme Court in the Wragg and Wisconsin Co-operative Milk Pool cases, supra, by the Court of Appeals for 7th Circuit, and denial of certiorari by the Supreme Court, 314 U.S. 655, 62 S.Ct. 105, 86 L.Ed 525.

The case of Gamble v. Daniel, 8 Cir., 39 F.2d 447, 452, appeal dismissed 281 U.S. 705, 50 S.Ct. 464, 74 L.Ed. 1129, does not bear out the contention of the alleged bankrupt. The Peters Trust Company, the alleged bankrupt therein, had been incorporated under the Nebraska Statutes as a trust company, and under the statutes of Nebraska such companies were forbidden to do a banking business. The court in that case held that the receiving of deposits was a necessary element of a banking business, and the fact the trust company did a banking business would not be considered because any such business was ultra vires, under the statute and under their charter

and by-laws. In the instant case the corporation did the very things the statute empowered it to do, and the very things provided in its articles of association and by-laws. The Court in the case of Gamble v. Daniel, supra, after considering the effect of the state statute, said: "A consideration of the above articles and sections therein convinces that companies organized under article 19 are not banking corporations in the meaning of the state statutes, in the commonly accepted meaning, *nor in the meaning of the Bankruptcy Act.* Therefore, this company was subject to bankruptcy." (Italics supplied.)

In the decision in that case, therefore, the court did not base it solely on the state statute, but took into consideration the bankruptcy rule as well. This decision also preceded the decision in Wragg v. Federal Land Bank, supra, and In re Wisconsin Co-operative Milk Pool, supra. Had the court in that case relied solely on the state statute, which it did not, its authority would have been seriously weakened, in view of the decisions of the Supreme Court.

In 148 A.L.R. p. 721, annotating the case of Hoile v. Unity Insurance Co., 4 Cir., 136 F.2d 133, the annotator said:

"V. Comment on State Classification and Bankruptcy Rules.

"The Supreme Court of the United States has not yet ruled on the conflict between the circuit courts of appeals as to whether (sic) the nature of corporations, for the purpose of determining their amenability to bankruptcy, should be governed by their state classification or by bankruptcy law. Until the Court does, it may be pointed out that the district courts in the several circuits must follow the rule favored by their respective circuit courts. District courts in circuits which are not committed to either rule are free to choose between them. It is fortunate that in many cases the same result is reached by both rules. However, as some district courts will have to choose between the rules, it may be permitted to point out certain considerations that seem to weigh against the state classification rule.

"Congress did not declare the basis on which it excluded a certain group of corporations from the scope of the Bankruptcy Act. It did not declare that the nature of the excluded corporations was to be ascertained by state classification. In like manner when Congress declared a certain group of corporations to be subject to involuntary bankruptcy it did not declare that the nature of the corporations so made subject to involuntary bankruptcy was to be ascertained by state law. The state classification rule is based on the theory that Congress intended state classifications to be adopted. This theory has to meet the objection that in all other cases in which Congress required the application of the act to depend on state law it expressly so stated. Thus, Sec. 6, 11 U.S.C.A. Sec. 24, declares: 'This Act shall not affect the allowance to bankrupts of the exemptions which are prescribed * * * by the State laws in force at the time of the filing of the petition in the State wherein they have had their domicile.' Section 64 as originally enacted provided: (b) The debts to have priority * * * shall be * * * (7) debts owing to any person who by the laws of the States * * * is entitled to priority. The latter provision was amended by the Chandler Act. It is now found in Sec. 64(a) (5), 11 U.S.C.A. Sec. 104(a) (5), and reads: Sec. 64(a) The debts to have priority * * * shall be * * * (5) debts owing to a landlord who is entitled to priority by applicable state law.' The state laws exempting life insurance vary greatly. Congress, therefore, provided a uniform exemption applying to certain life policies in situations where such policies were not exempt by state law. See Sec. 70(a) (5), 11 U.S.C.A. Sec. 110(a) (5), proviso. In this Bankruptcy Act exemption the phrase 'any life insurance policy which has a cash surrender value' is used. It is thought that Congress, had it intended to make the amenability of the insurance corporations to bankruptcy depend on state definition of what is an insurance corporation, would have done so explicitly."

The comment of the annotator was made, of course, without taking into consider-

ation the decision in the Wragg and Wisconsin Co-operative Milk Pool Cases, supra.

Applying this reasoning to the instant case the conclusion seems inescapable that had Congress intended the state law to control in determining the amenability of a "moneyed, business or commercial corporation" to the Bankruptcy Act it would have said so explicitly.

Again in the case of Schuster v. Ohio Farmers' Co-operative Milk Association, 6 Cir., 61 F.2d 337, at page 338, the court said: "The conclusion here reached is further indicated by the fact that although such cooperative associations are in existence and practical operation in almost every state of the Union (see Liberty Warehouse Co. v. Burley Tobacco Growers' Co-op. Marketing Ass'n, 276 U.S. 71, 48 S.Ct. 291, 72 L.Ed. 473) and the large amount of business transacted by them has been known to the courts and presumably to Congress for a comparatively long time, yet they have not been expressly excluded from the operation of section 4, sub. b of the Bankruptcy Act in the manner in which municipal, railroad, insurance, and banking corporations were excluded by the amendment of 1910, 11 U.S.C.A. § 22, sub. b. If it were not intended that they be deemed business or commercial corporations, such as they appear to be, it is to be assumed that Congress would have taken appropriate action to this end.

And again in the case of In re Wisconsin Co-operative Milk Pool, supra, the court there said: "The power to determine whether one may be bankrupt and what relief may be granted to him and to his creditors lies with Congress, and any state legislation interfering with the same must give way before that paramount authority. The state can not determine who shall be admitted to bankruptcy; that is the function of Congress. We can only inquire whether a corporation, whose powers are defined by the state statutes, comes within the Congressional definition of those who may be declared bankrupts. Thus far and thus far only may we have reference to the Wisconsin statutes and to the articles

of incorporation. State laws create legal interests. Federal legislation, in pursuance of the Constitution, determines whether an interest or right created by local law is within the federal law. The latter must prevail no matter what name is given the interest or right by the local law. Morgan v. Commissioner, 309 U.S. 78, 81, 60 S. Ct. 424, 84 L.Ed. 585. Our examination of the record convinces us that this corporation, under the Wisconsin statutes, possessed the powers of a business, commercial and moneyed corporation and that, therefore, it is within the Congressional definition of those whose estates may be administered in bankruptcy."

In the case of Prudence Realization Corp. v. Geist, supra, 316 U.S. at page 95, 62 S.Ct. at page 982, 86 L.Ed. 1293, the Court said: "Nothing decided in Erie R. Co. v. Tompkins, supra [304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487], requires a court of bankruptcy to apply such a local rule governing the liquidation of insolvent estates. The bankruptcy act prescribes its own criteria for distribution to creditors. In the interpretation and application of federal statutes, federal not local law applies. See Awotin v. Atlas Exchange Nat. Bank, 295 U.S. 209, 55 S.Ct. 674, 79 L.Ed. 1393; Chesapeake & Ohio Ry. Co. v. Martin, 283 U.S. 209, 212–213, 51 S.Ct. 453, 454, 455, 75 L.Ed. 983; Board of Com'rs v. United States, 308 U.S. 343, 349–350, 60 S.Ct. 285, 287, 288, 84 L.Ed. 313; Deitrick v. Greaney, 309 U.S. 190, 200, 60 S.Ct. 480, 484, 84 L.Ed. 694; Royal Indemnity Co. v. United States, 313 U.S. 289, 296, 61 S.Ct. 995, 997, 85 L.Ed. 1361. The court of bankruptcy is a court of equity to which the judicial administration of the bankrupt's estate is committed, Securities & Exchange Commission v. U. S. Realty Co., 310 U.S. 434, 455, 457, 60 S. Ct. 1044, 1053, 1054, 84 L.Ed. 1293, and it is for that court—not without appropriate regard for rights acquired under rules of state law—to define and apply federal law in determining the extent to which the inequitable conduct of a claimant in acquiring or asserting his claim in bankruptcy requires its subordination to other claims

which, in other respects, are of the same class."

■ The bankruptcy rule, therefore, must be applied in determining, whether the Association was a moneyed, business or commercial corporation.

■ The Association was not an eleemosynary association. Judging it by the criteria laid down in Michigan Sanitarium & Benevolent Association, supra, it was neither a philanthropic, humanitarian, charitable or benevolent corporation. Counsel for the Association urge upon the court's attention the purposes of the United States government in forming such associations, but the humanitarian, philanthropic, charitable or benevolent purposes of the government cannot be ascribed to the corporation. The United States was never a member of this Association, but it was at all times a creditor, and was at all times an outsider. Counsel point to the almost dictatorial powers exercised by the agents and representatives of the United States Department of Agriculture, in the operation of this Association. It must be remembered that the United States had a large financial interest in this corporation in the way of loans, and was justified in taking proper precautions to see that this money was not misused or squandered. It was dealing with men who had not theretofore made a success of business, and was trying to "rehabilitate and render self-supporting" these very men. As a matter of fact, they were in effect wards of the Department of Agriculture, and under its tutelage, and this control was necessary. This did not change the facts, that this was a corporation, and in no sense an agency or arm of the government. Farm Security Administration, Dept. of Agriculture v. Herren, 8 Cir., 165 F.2d 554.

Taking into consideration its articles of incorporation, its by-laws, its method of operations, the different sorts and amounts of business which it did during the time of its operation, and the clear and inescapable intendment that the Association should be operated for the benefit of its members, the court must conclude that it is such a corporation to which the Bankruptcy Act was applicable.

After the filing of the original petition, and before adjudication, other alleged creditors filed petitions for leave to intervene. The Association has filed objections to these being filed, in the first instance, and being counted to make up the number of petitioning creditors necessary to give the court jurisdiction.

■ Among these interveners are the Arkansas Central Co-operative Association, Inc., and Memphis Sales Service. The Association denies that they are in fact creditors. The answer is simple. On June 21, 1949, a stipulation was entered into by the parties in this case, and that stipulation shows as follows: "3. Exhibit C, attached hereto, is a list of the persons or firms who were never members of said Association, but in whose favor the books of the Association showed a credit balance and the amounts thereof."

By reference to Exhibit C, there appears as follows:

| " | Name | Amount of Credit Balance. |
|---|------|---------|
| 2 | Arkansas Central Cooperative Association, Inc. | $ 63.31 |
| 8 | Memphis Sales Service, | 25.55." |

From the books of the Association it is apparent they are creditors, and no proof has been adduced which would overcome the admission that they were creditors. Furthermore the petitions were filed under oath, making a strong case for their correctness. The explanation offered by the Association is not sufficient to overcome the proof that they are creditors. In Re Glassberg, D.C., 59 F.2d 209, 210, the court said: "To this objection it is enough to reply that the figures are taken from the books of the bankrupt. They are therefore based on admissions. These are competent evidence against him, in the absence of it appearing that he himself omitted to enter the whole truth in the books. Moreover, admissions are among the best types of evidence now to be found; there is no

reason why the trust estate should be compelled to rely on or even to call the bankrupt as its witness; * * *."

The court holds that the Memphis Sales Service and the Arkansas Central Cooperative Association, Inc., are creditors of the alleged bankrupt.

 Even though they be held to be creditors, objection is made to their intervening, and to their being counted in the number necessary to give the court jurisdiction. This is answered by the Supreme Court in Canute S. S. Co. v. Pittsburgh & West Virginia Coal Co., 263 U.S. 244, 249, 44 S.Ct. 67, 68, 68 L.Ed. 287:

"We therefore conclude that where a petition for involuntary bankruptcy is sufficient on its face, alleging that the three petitioners are creditors holding provable claims and containing all the averments essential to its maintenance, other creditors having provable claims who intervene in the proceeding and join in the petition at any time during its pendency before an adjudication is made, after as well as before the expiration of four months from the alleged act of bankruptcy, are to be counted at the hearing in determining whether there are three petitioning creditors qualified to maintain the petition, it being immaterial in such case whether the three qualified creditors joined in the petition originally or by intervention.

"The decisions in the Circuit Courts of Appeals and District Courts are to this effect. (Citing a long list of cases.)" See also Guterman v. C. D. Parker & Co., 1 Cir., 86 F.2d 546.

It appearing that there are three petitioning creditors, sufficient to give the court jurisdiction, it is immaterial how the original petitioning creditors came to join in, or whether they have a right to withdraw. The court, therefore, holds that it has jurisdiction of the case to order an adjudication under this petition for involuntary bankruptcy.

 Under Rule 5 of the Federal Rules of Civil Procedure, 28 U.S.C.A., the filing of the petition with the Clerk at Little Rock, in the Western Division of the District was permissible. But the venue of this action being in the Jonesboro Division, the court holds that the petition was filed on March 12, 1945, and effective as of the date the petition was received in the Clerk's office at Jonesboro, where the subpoenae was issued.

An order of adjudication will be entered